UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEDANDER PROUT,<br><br>    PLAINTIFF,<br><br>v.<br><br>ANNE C. VLADECK & VLADECK RASKIN CLARK, P.C.,<br><br>    DEFENDANTS. | COMPLAINT<br><br>Case No. _____ |

Plaintiff Alexander Prout ("Plaintiff" or "Prout"), by and through his attorneys, Sanford Heisler Sharp, LLP ("Sanford Heisler"), brings this action against Anne C. Vladeck, Esq. ("Vladeck" or "Defendant Vladeck") and Vladeck, Raskin & Clark, P.C. ("the Vladeck Firm" or "Defendant Vladeck Firm") (collectively, "Defendants"). Prout alleges upon knowledge as to himself and his own acts, and otherwise upon information and belief, as follows:

I.  **INTRODUCTION**

1. In May 2014, Prout contacted Vladeck and the Vladeck Firm seeking legal representation to resolve a dispute with his then-employer. Defendants agreed to represent Prout and subsequently advised him to reject a settlement offer valued at over one million dollars. Prout did so in reliance on Defendants' advice and in anticipation of eventually filing a legal action in court. Defendants, however, never took action to file Prout's case nor even to preserve Prout's claims, despite his repeated requests that they do so. As a result, several applicable statutes of limitations lapsed, sharply reducing the value of Prout's case.

2. Three years later, Prout settled his claims with his former employer through new counsel, Sanford Heisler. Prout received substantially less than he could have received had Defendants

1

diligently pursued and preserved his claims.

3. Prout now brings claims for legal malpractice and for Defendants' breach of fiduciary duty committed after the attorney-client relationship between Prout and Defendants was terminated.

## II.   PARTIES

4. Plaintiff has been a resident of Japan, Hong Kong, New York, Florida, and Washington, D.C., and, at all times relevant to this action, a citizen of the United States. Plaintiff is currently a domiciliary of Washington, D.C.

5. Defendant Vladeck, Raskin & Clark, P.C. holds itself out as an employment and labor law firm incorporated under the laws of New York State. At all times relevant to this action, Defendant Vladeck, Raskin & Clark, P.C. has maintained its sole office in New York City at 565 Fifth Avenue, 9th Floor, New York, New York 10017.

6. Defendant Anne C. Vladeck, Esq. is a named partner and the Chief Executive Officer of Vladeck, Raskin & Clark, P.C. Upon information and belief, Vladeck is domiciled in New York and works at the firm's sole office in New York, New York.

## III.   JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant Vladeck Firm pursuant to CPLR § 301, because the Vladeck Firm is incorporated and headquartered in New York.

8. Upon information and belief, Defendant Vladeck is domiciled in New York, New York. Defendant Vladeck's wrongful acts or omissions were committed in New York State. Defendant Vladeck regularly does or solicits business, engages in a persistent course of conduct, and/or derives substantial revenue from goods used or services rendered in New York State. The Court therefore has personal jurisdiction over Defendant Vladeck pursuant to CPLR §§ 301 and 302.

9. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a),

because the amount in controversy exceeds $75,000 and Plaintiff is a citizen of Washington, D.C. while Defendants are citizens of New York.

10. Venue is proper in this district because, all defendants reside in this state and in this district and because Defendants' acts and omissions giving rise to Plaintiff's claim occurred in this district. 28 U.S.C. § 1391(b)(1)-(2).

### IV. FACTUAL ALLEGATIONS

#### A. Prout Engages Defendants to Represent Him in Claims Against His Employer

11. In 2014, Prout worked as a managing director outside of the United States for a company headquartered in the United States.

12. Prout contacted Vladeck on May 13, 2014, requesting representation for a dispute with his employer. He informed Vladeck that was seeking advice regarding separation options from his employer. Vladeck and the Vladeck Firm agreed to assist him and Plaintiff entered an attorney-client relationship with Defendants Vladeck and the Vladeck Firm.

13. Defendant Vladeck indicated to Prout that he had whistleblower retaliation claims that could form the basis for a negotiated settlement.

14. At the end of May 2014, Prout's second daughter, Chessy, was sexually assaulted at her boarding school in the United States. Prout, who had been at the school at the time to attend the graduation of his eldest daughter, remained in the United States to care for Chessy. Prout informed Vladeck of the assault and of his need to remain in the United States in order to care for his daughter.

15. On July 2, 2014, Defendant Vladeck, on behalf of herself and Defendant Vladeck Firm, sent Prout an engagement letter outlining the terms of Prout's agreement with the Vladeck Firm, including the Vladeck Firm's agreement to "advise [Prout] regarding an exit strategy" from his

3

employer. Defendant Vladeck stated that she would be "primarily responsible for the work" related to his case, billed at her hourly rate. Prout signed and returned the letter, along with a $5,000 retainer, the following day, July 3, 2014.

16. On August 4, 2014, Defendant Vladeck wrote to Prout's employer stating that Defendants represented Prout in "his claims of, inter alia, retaliation for raising concerns about potentially unlawful conduct; retaliation for taking family leave; and claims relating to the inappropriate conduct of his immediate supervisor."

17. Vladeck spoke with Prout's employer on August 5, 2014 and agreed that Prout would negotiate the terms of his separation directly with the employer's Head of Human Resources. Vladeck further consented that Defendants' role would be limited to documenting the agreement reached by Prout and his employer. Vladeck assented to this arrangement without Prout's prior consent.

18. Vladeck and Prout's attempts to negotiate a separation proved unsuccessful.

19. In mid-August 2014, Prout applied for leave under the Family Medical Leave Act (FMLA) in order to care for his daughter. Prout's employer approved the leave, and Prout remained on leave until November 3, 2014.

20. When Prout returned to work at the Company's headquarters on November 4, 2014, the employer immediately terminated his employment. At that time, the employer offered Prout a separation package that it valued at more than $1 million in return for a general release of claims.

21. Vladeck advised Prout to reject this offer. She stated that Prout should not settle for pennies on the dollar and that he could get more if he filed a lawsuit. Prout relied on Vladeck's advice and allowed the offer to expire later that month.

22. Vladeck further advised Prout to establish a residence in New York City, purportedly to prepare to file suit against his former employer under New York City law. In reliance on this advice, Prout established residency in New York City.

**B.     Defendants Fail to File Suit on Prout's Behalf, or Otherwise Preserve His Claims**

23. Defendants did not advise Prout of the applicable statutes of limitations for his whistleblower claims, including the 180-day deadline to file a charge with the Department of Labor in order to preserve a claim of whistleblower retaliation under the Sarbanes-Oxley Act. As a result, Prout never filed a claim with the Department of Labor and forfeited his Sarbanes-Oxley whistleblower-retaliation claims.

24. Defendants further did not advise Prout that he had claims for race and national origin discrimination under the Title VII of the Civil Rights Act of 1964 despite this statute's established extraterritorial application to Prout, who worked abroad.

25. Defendants further did not advise Prout of the associated 180- or 300-day deadlines to file an administrative charge with the Equal Employment Opportunity Commission or a related state agency. As a result, Prout did not file such a charge, and Defendants allowed these claims, too, to lapse.

26. Prout was aware, however, of the two-year statute of limitations from his November 4, 2014 termination that applied to his FMLA claims. He repeatedly attempted to contact Vladeck to receive an update on his case and to prepare the filing of a lawsuit within the two-year statute of limitations. For example, on December 16, 2015, Prout wrote Defendant Vladeck, asking "Do you have time for call this week to discuss next steps and timing? ... [I] can speak at anytime during next 3 days." On January 14, 2016, Prout wrote Defendant Vladeck that he was trying to "get on your calendar for a meeting. I am only 2 blocks away and can be there anytime today or tomorrow."

On May 19, 2016, Prout sent Defendant Vladeck a text message stating, "Hope all is well. Just checking in re: timing."

27. Defendants did not respond to these messages.

28. In the fall of 2016, almost two years after his termination, Prout wrote to Vladeck with increasing urgency regarding the upcoming two-year statute of limitations on his claims for non-willful FMLA discrimination and retaliation. On September 27, 2016, Prout texted Vladeck that he "would like to fix plan for [employer] as SOL is approaching." On September 19, 2016, Prout emailed Vladeck, "I am concerned about SOL for our case and how to proceed to reach conclusion with [employer]." On October 6, 2016, Prout wrote to Defendant Vladeck, "Checking in to see if you were able to connect with [employer]. Pls let me know what the plan is to avoid the SOL issue should [employer] respond negatively. Are you ready and have capacity to keep this on track or should I prepare back up plan?" On October 18, 2016, Prout emailed Vladeck, "Have you confirmed plans to file in NY vs [employer's home state]? Do you think an extension of the SOL will be needed or are you ready to file if they tell us to go away?"

29. Defendants did not respond to these messages.

30. On October 20, 2016, apparently only at Prout's urging, Defendant Vladeck spoke with the Assistant General Counsel of Prout's former employer, but did not reach resolution. Defendants did not seek a tolling agreement.

31. With the two-year filing deadline now near, Defendant Vladeck assured Prout that the two-year deadline for non-willful FMLA discrimination and retaliation was not critical. She instead assured Prout that the three-year statute of limitations for willful violations of the FMLA would apply to his case.

32. In reliance on Defendants' advice, Prout allowed the two-year statute of limitations on his claims of non-willful violations of the FMLA to expire on November 4, 2016.

33. At no point during Defendants' representation of Prout did Defendants attempt to otherwise preserve any of Prout's claims by requesting Prout's employer agree to a tolling agreement. Moreover, despite urging Prout to reject his employer's offer of over one million dollars and to establish residence in New York, supposedly to facilitate filing of a lawsuit, Defendants took no action to file a lawsuit on behalf of Prout to preserve any of his viable claims against his employer. Indeed, despite Prout's subsequent requests for records from Defendants, Defendants have never produced any draft pleadings or other documents evidencing their work on his case.

34. Because of Defendants' procrastination, by the time Prout retained Sanford Heisler as new counsel in June 2017, his only remaining timely claims were for willful violations of the FMLA and retaliation in violation of the Dodd-Frank Act.

      **C.**      **Defendants Fail to Produce Invoices, Return Any Portions of Prout's Retainer, or Produce Prout's Client File Upon Request at the Termination of the Attorney-Client Relationship**

35. Throughout Defendants' three-year attorney-client relationship with Prout, Defendants never produced an invoice to inform Prout of hours worked. Defendants did not do so even though they retained his five-thousand-dollars ($5,000) and repeatedly demanded that Prout pay them more money—supposedly in compensation for work done on his behalf.

36. In June 2017, Prout contacted Sanford Heisler seeking new counsel in his claims against his former employer.

37. On June 27, 2017, Prout emailed Vladeck, asking her to send any files that she had regarding his case to Sanford Heisler. Prout reiterated this request on July 1, 2017. Defendants did not respond.

38. During a phone call on July 17, 2017 between Sanford Heisler and Defendants, Sanford Heisler repeated Prout's request for his case files. Defendant Vladeck now responded that Prout should email her to confirm that she could even speak with Sanford Heisler. Prout emailed Defendant Vladeck so stating. Still, Defendants did not produce Prout's case file.

39. On August 2, 2017, Vladeck emailed Sanford Heisler a summary of Defendants' representation of Prout. With respect to documents, Vladeck stated only that "[Prout] also has in his possession all of our correspondence and related documents." Defendants did not provide case documents. And Defendants never provided any documents evidencing any efforts to preserve or otherwise pursue Prout's claims after advising him to reject Defendants' settlement offer.

40. On October 31, 2017, Sanford Heisler emailed Defendant Vladeck, yet again, to confirm she had no case file for Prout. On November 7, 2017, Vladeck emailed Sanford Heisler and stated that she had previously provided Defendants' position regarding documents in their prior correspondence (of August 2). Defendant Vladeck also asked whether Prout was planning to pay Defendants, despite the Vladeck Frim's having never produced any bills or invoices to Prout or Sanford Heisler and continuing to hold Prout's retainer.

41. Defendants obtained and created documents throughout the course of their representation of Prout, including, at the very least, correspondence with Prout and with his former employer.

42. Nevertheless, Defendants have not produced Prout's client file to Prout or Sanford Heisler.

43. Defendants also have not produced any billing invoices or otherwise provided documents evidencing any billable work performed on Prout's case.

44. Nevertheless, Defendants remain in possession of Prout's five-thousand-dollar ($5,000) retainer.

45. On November 7, 2017, with Sanford Heisler as his attorneys, Prout resolved his case against his former employer. However, Prout's resolution against his former employer was for considerably less money than he would have received had the Vladeck Firm not allowed relevant statutes of limitations to lapse.

### V. COUNTS

### COUNT I
### LEGAL MALPRACTICE

46. Plaintiff re-alleges and incorporates each allegation in this Complaint as if fully set forth herein.

47. Defendants failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by an ordinary attorney or law firm within the legal community by, *inter alia*, failing to reasonably communicate with Plaintiff and inform him of his viable causes of actions and associated statutes of limitations, failing to preserve Plaintiff's viable causes of actions within the statute of limitations, and failing to provide Plaintiff invoices or return unbilled portions of Plaintiff's retainer.

48. As a result of Defendants' negligence, Prout settled his claims against his employer, rather than file suit and received considerably less money than he would have had Defendants not allowed the relevant statutes of limitations to lapse.

49. Defendants' failure to exercise ordinary care, skill, and diligence with respect to the statutes of limitations caused Plaintiff to lose the ability to assert viable claims against Plaintiff's former employer, including, but not limited to, claims under the following statutes: Sarbanes-Oxley Act; Title VII of the Civil Rights Act of 1964; Family and Medical Leave Act

(non-willful violations). But for Defendants' failures, Plaintiff would have been able to settle with his former employer for a substantially higher value.

50. Defendants' failure to communicate and keep Plaintiff reasonably informed about his case caused Plaintiff to not seek alternative counsel within the statutory limitation periods. But for Defendants' failures, Plaintiff would have sought alterative counsel in order to preserve his claims and would have been able to settle his claims for a substantially higher value.

51. Defendants' failures with respect to Plaintiff's retainer caused Plaintiff to be deprived of monies owed to him by Defendants.

## COUNT II
## BREACH OF FIDUCIARY DUTY

52. Plaintiff re-alleges and incorporates each allegation in this Complaint as if fully set forth herein.

53. Defendants and Plaintiff entered into an attorney-client relationship, thereby establishing a fiduciary relationship. Defendants' fiduciary duties continued beyond the termination of the attorney-client relationship.

54. Defendants engaged in misconduct following the termination of the attorney-client relationship by failing to provide Plaintiff invoices against Plaintiff's retainer and failing to return unbilled portions of the retainer to Plaintiff. As a direct result, Plaintiff has been deprived of monies owed to him by Defendants.

55. Defendants further engaged in misconduct by failing to provide Plaintiff with documents related to Defendants' representation, including documents Defendants received from Plaintiff's former employer and notes or documents related to Defendants' negotiations with Plaintiff's former employer.

56. As a result of being deprived of this information, Plaintiff spent substantial time and resources searching for documents. Without the benefit of all relevant documents and prior communications, Prout was placed in a less advantageous position in negotiations with his former employer and settled for less than he would have had Defendants not deprived him of his case documents.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A.  An award of damages in an amount not less than 5 million dollars;

B.  An award of litigation costs and expenses, including reasonable attorneys' fees;

C.  Pre-judgment interest; and

D.  Such other and further relief as the court may deem just and proper.

### VII. DEMAND FOR JURY

Plaintiff demands trial by jury on all issues.

Dated: January 11, 2018

Respectfully submitted,

Jeremy Heisler (JH-0145)
Russell L. Kornblith (RK-1950)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
jheisler@sanfordheisler.com
rkornblith@sanfordheisler.com

**David W. Sanford***
**Ellen J. Peterson***
**SANFORD HEISLER SHARP, LLP**
1666 Connecticut Avenue NW, Suite 300
Washington, DC 20009

Telephone: (202) 499-5200
Facsimile: (202) 499-5199
dsanford@sanfordheisler.com

*Pro Hac Vice Admission Pending*

**Counsel for Plaintiff**