**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
ALEXANDER PROUT,

                                                    Case No. 18-CV-00260 (JSR)

                              Plaintiff,

                    -against-

ANNE C. VLADECK & VLADECK, RASKIN &
CLARK, P.C.,

                              Defendants.

----------------------------------------------------------------X


## SECOND SUPPLEMENTAL MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANTS' MOTION TO DISMISS


***Of Counsel*:**
Ivan S. Smith
Anthony J. Proscia
Adam M. Marshall

**KAUFMAN DOLOWICH & VOLUCK, LLP**
40 Exchange Place, 20th Floor
New York, New York 10005
T: (212) 485-9600
F: (212) 485-9700
E: ISmith@kdvlaw.com
   AProscia@kdvlaw.com
   AMarshall@kdvlaw.com


*Attorneys for Defendants Vladeck, Raskin & Clark, P.C. and Anne C. Vladeck*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………...ii

PRELIMINARY STATEMENT ................................................................................................. 1

SUPPLEMENTAL ARGUMENT.............................................................................................. 3

SUPPLEMENTAL POINT I
THE SAC FAILS TO STATE A CLAIM FOR MALPRACTICE BASED
ON DEFENDANTS' ADVICE REGARDING THE SEVERANCE PACKAGE ...................... 3

SUPPLEMENTAL POINT II
DEFENDANTS ARE ENTITLED TO AN ORDER DISMISSING
PROUT'S TITLE VII-BASED MALPRACTICE CLAIM WITH PREJUDICE ......................... 4

SUPPLEMENTAL POINT III
THE FMLA-BASED MALPRACTICE CLAIM IS BARRED
BY PROUT'S VOLUNTARY PRE-SUIT SETTLEMENT WITH INVESCO ........................... 5

SUPPLEMENTAL POINT IV
THE SOX-BASED MALPRACTICE CLAIM IS FACIALLY DEFECTIVE AND
BARRED BY PROUT'S VOLUNTARY PRE-SUIT SETTLEMENT WITH INVESCO ......... 11

      A.      Prout Fails to Allege a Viable Underlying SOX Claim ....................................... 11

      B.      Prout Recovered for the Same Alleged Injury
            Through His Dodd-Frank Claim.......................................................................... 14

CONCLUSION......................................................................................................................... 15

# TABLE OF AUTHORITIES

## *Cases*

*Asadi v. G.E. Energy (USA), LLC*,
2012 U.S. Dist. LEXIS 89746 (S.D. Tex. Jun. 28, 2012) ............................................................12

*Becker v. Julien, Blitz & Schlesinger*,
95 Misc. 2d 64, 406 N.Y.S.2d 412 (Sup. Ct. N.Y. Co. 1977) ........................................................6

*Bellison Law, LLC v. Iannucci*,
102 A.D.3d 563, 958 N.Y.S.2d 383 (App. Div. 2013) ...........................................................3, 13

*Berman v. Neo@Ogilvy LLC*,
801 F.3d 145 (2d Cir. 2015).........................................................................................................15

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
56 F.3d 343, 345 (2d Cir. 1995).....................................................................................................4

*Cowman v. Northland Hearing Centers, Inc.*,
628 Fed. Appx. 669 (11th Cir. 2015) ..............................................................................................9

*Dawkins v. Fulton Cty. Gov't*,
733 F.3d 1084 (11th Cir. 2013) ......................................................................................................9

*Dawson v. City of New York*,
2013 U.S. Dist. LEXIS 117744 (S.D.N.Y. Aug. 19, 2013)....................................................13, 14

*Fusco v. Fauci*,
99 A.D.2d 263, 749 N.Y.S.2d 715 (App. Div. 2002) .....................................................................4

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
310 F. Supp. 2d 569 (S.D.N.Y. 2004).............................................................................................4

*Grace v. Law*,
24 N.Y.3d 203, 997 N.Y.S.2d 334 (N.Y. 2014) ............................................................................6

*Israel v. Carpenter*,
120 F.3d 361 (2d Cir. 1997)............................................................................................................4

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
274 F.3d 706 (2d Cir. 2001)........................................................................................................8, 9

*Lauer v. Rapp*,
190 A.D.2d 778, 593 N.Y.S.2d 843 (App. Div. 1993) ...................................................................3

*Luciano v. Olsten Corp.*,
110 F.3d 210 (2d Cir. 1997)..............................................................................8

*Manti Transp. v. Assocs. Commer. Corp.*,
2002 U.S. Dist. LEXIS 3738 (E.D.N.Y. Mar. 8, 2002) ....................................5

*Meng-Lin Liu v. Siemens A.G.*,
978 F. Supp. 2d 325 (S.D.N.Y. 2013)...............................................................12

*Morales v. Kavulich & Assocs., P.C.*,
2018 U.S. Dist. LEXIS 44598 (S.D.N.Y. Mar. 19, 2018) .............................14

*NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*,
105 F.3d 72 (2d Cir. 1997)................................................................................4

*Phelan v. Local 305 of the United Ass'n of Journeymen*,
973 F.2d 1050 (2d Cir. 1992)..........................................................................14

*Samuels v. Northern Telecom, Inc.*,
942 F.2d 834 (2d Cir. 1991)...........................................................................4, 5

*Somma v. Dansker & Aspromonte Assoc.*,
2006 N.Y. Misc. LEXIS 3174 (Sup. Ct. N.Y. Co. Sept. 15, 2006) ...............6, 9, 10, 11

*Somma v. Dansker & Aspromonte Assoc.*,
44 A.D.3d 376, 843 N.Y.S.2d 577..................................................................6, 10

*Ulrich v. Moody's Corp.*,
*2018 U.S. App. LEXIS 679 (2d Cir. Jan. 11, 2018)* .....................................12

*Wang v. Palsimano*,
157 F. Supp. 3d 306 (S.D.N.Y. 2016).............................................................13

## ***Statutes***

Fed. R. Civ. P. 12 ................................................................................................1

Fed. R. Civ. P. 41 .............................................................................................4, 5

Family Medical Leave Act...........................................................................*passim*

Sarbanes-Oxley Act of 2002 .......................................................................*passim*

Dodd-Frank Wall Street Reform and Consumer Protection Act .................*passim*

Title VII of the Civil Rights Act of 1964..................................................1, 2, 4, 5

## PRELIMINARY STATEMENT

Defendants VLADECK, RASKIN & CLARK, P.C. ("VRC") and ANNE C. VLADECK ("Vladeck) (collectively, the "Defendants") respectfully submit this Second Supplemental Memorandum of Law in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(7) and 19, to dismiss the claims asserted against them by Plaintiff Alexander Prout ("Prout").

This lawsuit grows more frivolous with each amendment to Prout's complaint. For the last two months, Prout wasted this Court's time, and ours, by repeatedly refusing to plead the facts underlying his supposed legal malpractice claim. Not only did Prout resist describing the claims he allegedly "lost" beyond labeling them as claims for "non-willful" violations of the FMLA, "whistleblower retaliation under the Sarbanes-Oxley Act," and "race and national origin discrimination under Title VII," but Prout also conspicuously avoided distinguishing the FMLA and Dodd-Frank claims he settled in November 2017 (while represented by Sanford Heisler) from the FMLA and SOX claims that allegedly became time-barred on Defendants' watch.

Now we now know why Prout was so evasive. It was not, as his counsel recently implied, because Prout was limited by a confidentiality provision in his settlement agreement with Invesco. [*See* Proscia Second Suppl. Decl., Ex. N, at 21:19-24, 22:5-7.] Prout could have applied for relief from that provision at the initial conference on March 9, 2018, or before he filed his amended complaint on March 30, 2018, or at any other point before oral argument on Defendants' motion to dismiss. The truth is that Prout and his attorneys stonewalled because they knew this case could not survive if the confidentiality clause was lifted and the details of Prout's underlying claims and pre-suit settlement with Invesco were forced to be laid bare. As discussed below, they were right.

First, there is the matter of Defendants' alleged advice that Prout reject the $1 million severance package offered by Invesco in November 2014. Prout highlighted this advice in both his original and amended complaint, implying that his eventual settlement with Invesco was for *less*

1

than $1 million. [Proscia Decl., Ex. A, at ¶¶ 20-21; Proscia Suppl. Decl., Ex. M, at ¶¶ 21-22.] It turns out that was beyond disingenuous. In his Second Amended Complaint ("SAC"), Prout admits that he settled with Invesco for **$1.75 million**. [Proscia Second Suppl. Decl., Ex. O, at ¶ 119.] Since Prout recovered substantially more than Invesco offered him in 2014, he cannot plausibly allege that any advice to reject the original offer was negligently given or that it caused him to suffer any actual pecuniary damages. This was a baseless ground for a malpractice claim against the Defendants from the beginning.

Second, there is the Title VII-based malpractice claim. In both his original and amended complaint, Prout scolded Defendants for "not advis[ing] Prout that he had claims for race and national original discrimination under Title VII of the Civil Rights Act of 1964." [Proscia Decl., Ex. A, ¶ 24; Proscia Suppl. Decl., Ex. M, at ¶ 25.] Yet, as soon as this Court released Prout from the confidentiality provision and suggested that he "put in everything that [he] [could], under Rule 11" in support of his claims, [Proscia Second Suppl. Decl., Ex. N, at 31:10-16; *see also* ECF Doc. 31], Prout gave up on his discrimination claim entirely. The SAC contains no mention of Title VII and no allegation that Prout was the victim at Invesco of discrimination based on his race or national origin. Clearly, this was a frivolous ground for a claim all along.

Third, there is the FMLA-based malpractice claim. The SAC confirms what Prout conceded during the last round of briefing and at oral argument: that his supposed claim for "non-willful" FMLA violations arose from the same conduct as the timely "willful" FMLA violations claim Prout settled in November 2017 (i.e., Invesco's termination of his employment for taking approved FMLA leave). [Proscia Second Suppl. Decl., Ex. O, at ¶¶ 54-57, 111.] Thus, this is not a case where Prout was "effectively compelled" to settle a FMLA claim that was certain to be dismissed as time-barred. By his own admission, Prout could have successfully litigated his FMLA claim against Invesco under a willfulness theory, but elected to settle on the advice of his successor

2

counsel instead, because "[p]roving willfulness is no slam dunk." [Proscia Second Suppl. Decl., Ex. O, at ¶ 120.] Prout voluntarily chose not to pursue an apparently viable FMLA claim.

Lastly, there is the malpractice claim based upon the expiration of Prout's hypothetical SOX whistleblower retaliation claim. As Defendants long suspected, the alleged SOX claim turned on the same facts as the timely Dodd-Frank claim Prout also chose to voluntarily settle with Invesco. Both concerned Prout's termination for allegedly reporting what he believed to be a violation of the Foreign Corrupt Practices Act ("FCPA"). [*Id.* at ¶¶ 67-74, 111.] Thus, even assuming Prout ever had a viable SOX claim to lose – which he did not – Prout cannot plausibly allege that the loss of the SOX claim caused him to suffer any actual damages since he ultimately recovered for the exact same injury under his Dodd-Frank claim.

## SUPPLEMENTAL ARGUMENT

### SUPPLEMENTAL POINT I

#### THE SAC FAILS TO STATE A CLAIM FOR MALPRACTICE BASED ON DEFENDANTS' ADVICE REGARDING THE SEVERANCE PACKAGE

To the extent Prout's earlier pleadings left any room for debate, the SAC confirms that Prout cannot state a claim for legal malpractice related to Defendants' alleged advice to reject the severance package Invesco offered in November 2014. Legal malpractice claims require a showing of actual and ascertainable damages. *Lauer v. Rapp*, 190 A.D.2d 778, 779, 593 N.Y.S.2d 843 (App. Div. 1993). Here, Prout alleges that Invesco offered him $1,133,479.00 "in compensation and stock vesting plus dividends" if he agreed to resign rather than be terminated for cause. [Proscia Second Suppl. Decl., Ex. O, at ¶ 44.] That sum is far less than the $1.75 million Prout extracted from Invesco when he voluntarily settled his claims in 2017. [*Id.* at ¶ 44.] Thus, even if Defendants' alleged recommendation was based upon an erroneous and overly optimistic assessment of Prout's claims, [*Id.* at ¶ 52], the absence of an actual pecuniary injury defeats any conceivable cause of

action for malpractice.[1] *See Fusco v. Fauci*, 299 A.D.2d 263, 749 N.Y.S.2d 715 (App. Div. 2002) (affirming dismissal of malpractice claim based on erroneous settlement advice where "the amount of the settlement, $1,250,000, exceed[ed] the $700,000 plaintiff previously stipulated to accept in full satisfaction of [his] underlying claims, plus interest.").

## SUPPLEMENTAL POINT II

## DEFENDANTS ARE ENTITLED TO AN ORDER DISMISSING PROUT'S TITLE VII-BASED MALPRACTICE CLAIM WITH PREJUDICE

As noted above, within the SAC, Prout has abandoned his frivolous claim for legal malpractice relating to Defendants' alleged "fail[ure] to investigate or prosecute" Title VII claims on his behalf. [*Compare* Proscia Second Suppl. Decl., Ex. N, *with* Opp. at 15.] This is a welcome concession.[2] That said, the Defendants are entitled to dismissal of this Title VII-based malpractice claim with prejudice, pursuant to Fed. R. Civ. P. 41.

"[A] party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004). *See Israel v. Carpenter*, 120 F.3d 361, 365 (2d Cir. 1997); *NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*, 105 F.3d 72, 78 (2d Cir. 1997); *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995); *Samuels*

---

[1] To the extent Prout may continue to assert that he has been damaged to the extent of the legal fees paid to VRC, [*id.*, Ex. O, at ¶ 108], those fees total the retainer of $5,000.00, [*Id.* at ¶ 27], which has not been disbursed and remains in VRC's IOLA account.

[2] Prout's fluctuating assertions are not simply mistakes. Rather, they are overt attempts to prop up frivolous claims by attempting to mislead the Court into believing that Defendants' inattention to Prout's case led to their "blowing the SOL" on his claims. For example, Prout alleges that he emailed Vladeck on September 19, 2016 and received no response. [*id.*, Ex. O, at ¶ 88.] Contrary thereto, Vladeck responded to Prout, which Prout confirmed in an email dated September 26, 2016. [*See id.*, Ex. V.] Prout is no doubt well aware of when he met, spoke and/or corresponded with Defendants. Moreover, Sanford Heisler has perpetuated Prout's false narrative by selectively quoting from Prout's communications with Defendants.

*v. Northern Telecom, Inc*., 942 F.2d 834, 836 (2d Cir. 1991); *Manti Transp. v. Assocs. Commer. Corp.*, 2002 U.S. Dist. LEXIS 3738, at *14-15 (E.D.N.Y. Mar. 8, 2002).

Here, Prout's Title VII-based malpractice claim was already asserted in two pleadings, was the subject of extensive dismissal motion briefing, was analyzed during oral argument, [Proscia Second Suppl. Decl., Ex. N at 3:18-4:3], and was certain to be dismissed on the merits. To allow Prout to withdraw that cause of action without prejudice at this stage, after this Court directed him to plead the factual basis for the claim in detail, [*Id*. at 31:10-16; ECF Doc. 31], would only invite Prout to engage in further harassment of the Defendants in the future. Accordingly, the Title VII-based malpractice claim is ripe for dismissal with prejudice.

### SUPPLEMENTAL POINT III

### THE FMLA-BASED MALPRACTICE CLAIM IS BARRED BY PROUT'S VOLUNTARY PRE-SUIT SETTLEMENT WITH INVESCO

Prout's FMLA-based malpractice claim rests on a serious misapprehension of what it means for a settlement to be "effectively compelled by the mistakes of counsel." *Tortura v. Sullivan Papain Block McGrath & Cannavo, P.C.*, 21 A.D.3d 1082, 1083, 803 N.Y.S.2d 571 (App. Div. 2005). Prout apparently believes this doctrine permits a malpractice plaintiff to settle a viable claim against an underlying defendant, without ever filing suit, merely because the alleged mistakes of his former attorney meant that victory in the prospective lawsuit was not *guaranteed*. [*See* Proscia Second Suppl. Decl., Ex. O, at ¶ 120 ("Proving willfulness is no slam dunk.").]

Prout could not be more wrong. New York law imposes strict limits on a disgruntled client's ability to relitigate the merits of a settled case *via* a claim for legal malpractice, with the client's former attorney taking the place of the original defendant. Where an underlying claim is terminated "by settlement rather than by a dismissal or adverse judgment," a cause of action for legal malpractice can only be made out "if it is shown that assent by the client to the settlement

was compelled because prior misfeasance or nonfeasance by the attorneys *left no other recourse*."
*Becker v. Julien, Blitz & Schlesinger*, 95 Misc. 2d 64, 66, 406 N.Y.S.2d 412 (Sup. Ct. N.Y. Co.
1977), *modified on other grounds*, 66 A.D.2d 674 (App. Div. 1978) (emphasis added).[3] As such,
unless a client can plausibly allege that his attorney's negligence left him with *no choice* but to
settle his underlying claim, he cannot pursue the attorney for legal malpractice relating to the
inadequacy of the settlement. *Bellinson Law, LLC v. Iannucci*, 102 A.D.3d 563, 563, 958 N.Y.S.2d
383 (App. Div. 2013) ("The record does not support defendant's contention that he was forced to
settle the underlying action because plaintiff was incompetent and unprepared on the eve of trial.
Indeed, even if plaintiff was negligent, there is evidence in the record indicating that defendant
had other options besides settling the case."); *Somma v. Dansker & Aspromonte Assoc.*, 2006 N.Y.
Misc. LEXIS 3174 (Sup. Ct. N.Y. Co. Sept. 15, 2006), *aff'd*, 44 A.D.3d 376 (App. Div. 2007).

In this case, Prout does not contend that Defendants' alleged negligence left him with no
other option but to settle his FMLA claims against Invesco in November 2017, rather than filing
suit. In fact, under questioning by this Court, Prout's counsel conceded at oral argument that Prout
could have successfully litigated his FMLA claims under a willfulness theory:

> The Court: I thought the [Defendants'] negligence consisted in large measure of blowing various statute of limitations, but they weren't blown in their entirety right?
>
> Mr. Kornblith: That's correct.
>
> The Court: So with respect to the FMLA, what remained, if anything?

---

[3] New York law treats clients who voluntarily abandon viable claims in litigation almost as harshly, even in the absence of a negotiated settlement and *even where the client lost on the underlying claim at trial*. For example, the New York Court of Appeals has held: "[P]rior to commencing a legal malpractice action, a party who is likely to succeed on appeal of the underlying action should be required to press ahead." *Grace v. Law*, 24 N.Y.3d 203, 210, 997 N.Y.S.2d 334 (N.Y. 2014).

| Mr. Kornblith: | What remained was the three-year statute of limitations for willful violations. The two-year statute of limit[ations] for nonwillful violations had expired. |
| --- | --- |
| The Court: | **How are you in any way prejudiced since what you seem to be suggesting is a willful violation?** |
| Mr. Kornblith: | **Well, it could be viewed by the Court or a jury as a willful violation** . . . |

[Proscia Second Suppl. Decl., Ex. N, at 24:23-25:11 (emphasis added).] These sentiments are mirrored in the SAC, which quotes from the August 11, 2017 letter Sanford Heisler sent to Invesco's attorneys, stating that the "timing [of Prout's termination], combined with [Invesco]'s callous actions up to that point, demonstrate that [Invesco]'s conduct was willful." [*id*., Ex. O, at ¶ 111.] Thus, not only is it undisputed that litigation was a plausible alternative to a pre-suit settlement, but, on balance, the allegations in the SAC show that suing Invesco for FMLA violations under a willfulness theory would have been *preferable* to settling for "considerably less" than Prout and Sanford Heisler believed his FMLA claims were worth. [*Id*. at ¶¶ 78, 120.][4]

Prout tries to salvage his FMLA-based claim for legal malpractice by asserting that "[p]roving willfulness is no slam dunk." [*Id*. at ¶ 120.] The SAC opines that "Invesco could have easily defended its conduct by showing that it had consulted legal counsel and determined, reasonably, that Prout was not eligible for the FMLA because he had taken too much leave or worked abroad, among other reasons." [*Id*.] This argument fails for several reasons. First, according to Prout's own allegations, Invesco never mentioned his taking approved leave from August to November 2014 at the time he was terminated. Instead, Invesco's Global Head of Human Resources, Washington Dender, cited Prout's 2013 performance evaluation as the basis

---

[4] As this Court correctly observed at oral argument, [*id*., Ex. N, at 13:20-14:2], a finding that Invesco acted willfully would have entitled Prout to greater damages than those available on a non-willful claim. *See* 29 U.S.C. § 2617(a)(1)(A)(iii); *Reyes v. N.Y. City Health & Hosps. Corp.*, 2012 U.S. Dist. LEXIS 123117, at *9 (E.D.N.Y. Aug. 29, 2012).

for termination. [*Id.* at ¶ 44.] Second, Invesco never asserted in any of its pre-mediation correspondence that Prout was terminated for taking FMLA leave for which he was later determined to be ineligible. [*Id.*, Exs. P, Q.] Thus, Prout's argument rests on the assumption that Invesco would have asserted a defense in litigation that it never actually raised beforehand, despite multiple opportunities to do so.[5]

Third, even if Invesco had reversed course in a subsequent litigation, and argued for the very first time that it terminated Prout for taking leave after "consult[ing] legal counsel" and "determin[ing] . . . that Prout was not eligible for the FMLA," it is utterly speculative to conclude that a court would have found Invesco's alleged conduct to have been a non-willful violation of the FMLA rather than a willful one. For one thing, this hypothetical "advice of counsel" defense would have required Invesco to concede that its stated reason for firing Prout – his poor performance – was a mere pretext. This alone would be evidence of *intentional* misconduct on Invesco's part. *See Luciano v. Olsten Corp.*, 110 F.3d 210, 216-17 (2d Cir. 1997).

Moreover, the non-willful defense would have required a court to reject the application of equitable estoppel to Prout's FMLA claims. That was unlikely to occur. As Prout observed in his Opposition, "[a]ll seven circuits to decide the issue, including this one, have held that where an employer grants FMLA leave, and the employee detrimentally relies on that grant, the employer may not later assert that the employee was not entitled to leave." [Opp. at 7 (citing *Kosakow v.*

---

[5]   Speaking of defenses asserted by Invesco, we cannot help but point out the falsity of Prout's earlier allegation that Invesco "raised the lapsed statute of limitations as its primary defense" to Prout's FMLA claims. [Proscia Suppl. Decl., Ex. M, at ¶ 46.] As set forth in the September 7, 2017 letter from Invesco's counsel, which is selectively quoted in the SAC, Invesco's primary defense was that "it was Prout – not Invesco – who broached the subject of the termination of his employment." [Proscia Second Suppl. Decl., Ex. R at 2.] The letter went on to state that "following a lengthy leave of absence in July of 2014, Mr. Prout informed Invesco that he had no intention of returning to work and demanded a severance package." [*Id.*] The statute of limitations was an afterthought. [*Id.* at 3.]

8

*New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 726 (2d Cir. 2001).] And while the Eleventh Circuit (where Invesco is headquartered) has yet to rule on the issue, Prout admits that it "appears to be likewise primed to recognize equitable estoppel in the FMLA context if presented with an appropriate case." [Proscia Second Suppl. Decl., Ex. O at ¶ 60 (citing *Dawkins v. Fulton Cty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013) and *Cowman v. Northland Hearing Centers, Inc.*, 628 Fed. Appx. 669, 672 (11th Cir. 2015).]6

Fourth, even assuming Invesco would have asserted an "advice of counsel" defense in subsequent litigation, and even assuming a court would have held that such a defense – if proven true – would preclude a finding of willfulness as to the alleged FMLA violations, it is entirely speculative to conclude that the defense would have had *any basis in fact*. By choosing to settle his claims without engaging in any litigation whatsoever, Prout forfeited the opportunity to test the truthfulness of Invesco's assertions. There was no document discovery before settlement. There were no depositions of Invesco executives. And there was certainly no trial before a judge or jury. There were just a few strongly worded letters sent during pre-suit settlement negotiations. [Proscia Second Suppl. Decl., Exs. P, Q, R, S, T.]

The decision in *Somma v. Dansker & Aspromonte Assoc.* is instructive here.  In *Somma*, the plaintiff sued his former lawyers for legal malpractice alleging that the defendants' filing of a pretrial order ("PTO") which omitted various claims and categories of damage had forced the plaintiff to settle an underlying maritime personal injury action – before trial – for far less than the case was worth. 2006 N.Y. Misc. LEXIS 3174, at *2-4. The plaintiff opined that the deficient PTO had "set the upper limits on the settlement viability of [his] case." *Id*. at *3 (alternation in original).

---

6 Indeed, the FMLA claim had value only because Defendants expressly requested FMLA leave on Prout's behalf, [*id.*, Ex. N at ¶ 35], which was thereafter approved and made the estoppel argument possible.

The defendants moved to dismiss, arguing (among other things) that the plaintiff could not establish the elements of proximate cause and actual damages because the defendants had been discharged before plaintiff voluntarily elected to settle and because plaintiff's successor attorney never moved to amend the allegedly deficient PTO. The court agreed:

> Here, Somma cannot establish that defendants' alleged mishandling of the underlying action is the proximate cause of any purported damages he claims to have sustained.  Specifically, plaintiff cannot demonstrate that his decision to settle the underlying action was effectively compelled by the defendants' alleged mistakes.
>
> The PTO is central to plaintiff's claims against the movants in that it embodies plaintiff's laundry list of the defendants' alleged failures which are claimed to constitute malpractice such as the failure to specifically seek damages for lost earnings, maintenance and cure.  As defendants note, despite the numerous deficiencies which Somma cites to and successor counsel's purported "game plan" to aggressively move to amend the PTO, it is undisputed that [the successor attorney] made no attempt to amend the PTO even to account for medical treatment Somma obtained after the PTO was signed.  **In response, plaintiff merely speculates that the federal court would have denied any request to amend the PTO.  Had the federal court actually denied plaintiff's request to amend the PTO, this court might have had a basis to conclude that the complaint herein was sufficient to withstand a motion to dismiss.  However, absent such a determination, Somma's claims are too speculative to establish either proximate cause or specific damages**.

*Id*. at *8-9 (internal citations omitted) (emphasis added).[7]

The parallels between this case and *Somma* are obvious. Similar to the plaintiff in *Somma*, Prout complains that he "lost substantial leverage in [settlement] negotiations because Defendants failed to preserve his non-willful FMLA claims, which are much easier to prove." [Proscia Second Suppl. Decl., Ex. O, at ¶ 120.] Likewise, Prout relies entirely on conjecture in order to support his

---

[7] As noted earlier, the trial court's determination was unanimously affirmed on appeal. *See* 44 A.D.3d at 377 ("Settlement of an underlying action will not bar a claim for legal malpractice, but defendants no longer represented plaintiff at the time he agreed to settle.  Moreover, plaintiff's successor counsel had sufficient time and opportunity to adequately protect plaintiff's rights. Plaintiff's claim that the federal court in the underlying action would not have permitted amendment of a pre-trial order filed by defendants is speculative.") (internal citations omitted).

theories of proximate causation and damages. Indeed, Prout's malpractice claim against the Defendants is even more speculative than the claim rejected in *Somma*. Whereas the *Somma* plaintiff's malpractice claim turned on a *single* assumption that the court in the underlying action would have denied a motion to amend the PTO, Prout's claim rests on a *series* of assumptions, each one shakier than the last. Moreover, Sanford Heisler, like the successor attorney in *Somma*, had the time and opportunity to protect Prout's rights by bringing an action against Invesco for his still-timely FMLA claims if Prout was dissatisfied with the settlement terms Invesco proposed. Accordingly, Prout's attempt to "settle and sue" fails as a matter of law.

## SUPPLEMENTAL POINT IV

## THE SOX-BASED MALPRACTICE CLAIM IS FACIALLY DEFECTIVE AND BARRED BY PROUT'S VOLUNTARY PRE-SUIT SETTLEMENT WITH INVESCO

Prout's SOX-based malpractice claim fails on two distinct levels. First, notwithstanding the amplified factual allegations, the SAC still fails to plausibly allege that Prout ever had a viable SOX whistleblower retaliation claim. Second, assuming *arguendo* that Prout had a viable SOX claim against Invesco, and that the claim became time-barred due to Defendants' supposed negligence, the SAC fails to plausibly allege that Prout suffered actual damages since he voluntarily settled a Dodd-Frank claim against Invesco based on identical retaliatory conduct. As was true of his FMLA claims, Prout's decision to voluntarily settle the Dodd-Frank claim was not "effectively compelled" by the Defendants' alleged mistakes.

## A.    Prout Fails to Allege a Viable Underlying SOX Claim

Prout asserts that he had a claim under SOX's anti-retaliation provision based on his having allegedly been terminated, in part, for reporting what Prout believed to be a violation of the FCPA. [Proscia Second Suppl. Decl., Ex. O, at ¶¶ 67-74.] In support, Prout alleges that in April 2014, he informed Asha Balachandia and his supervisor, Andrew Lo, that he heard a rumor that the CEO

11

of Invesco Japan (Alex Sato) had purchased a $4,000 bottle of wine for a senior executive with Japan Post Bank. [Proscia Second Suppl. Decl., Ex. O, at ¶¶ 18-21.] Prout claims that Balachandia and Lo were dismissive of his concerns and that Lo "became increasingly hostile toward Prout" thereafter. [*Id*. at ¶¶ 18-21, 73.] Prout was terminated on November 3, 2014. [*Id*. at ¶ 44.]

The allegations in the SAC fall short of stating a plausible SOX claim against Invesco for several reasons. First, the reporting of putative FCPA violations does not constitute protected activity under the Sarbanes-Oxley Act, especially where, as here, there is no allegation that the violator *intended to defraud* the shareholders of a publicly traded company. *Meng-Lin Liu v. Siemens A.G.*, 978 F. Supp. 2d 325, 330 (S.D.N.Y. 2013); *Asadi v. G.E. Energy (USA), LLC*, 2012 U.S. Dist. LEXIS 89746, at *28-29 (S.D. Tex. Jun. 28, 2012).

Second, even if Prout had engaged in protected activity, the alleged retaliatory conduct lacks a sufficient territorial connection to the United States. The SOX anti-retaliation provisions do not apply extraterritorially. *Ulrich v. Moody's Corp., 2018 U.S. App. LEXIS 679, at *2-3 (2d Cir. Jan. 11, 2018)*; *Meng-Lin Liu*, 978 F. Supp. 2d at 330. Here, although the putative FCPA violation took place in New York City, [Proscia Second Suppl. Decl., Ex. O, at ¶ 18], Prout allegedly reported the violation while he was based abroad in Hong Kong, to executives who were themselves based in Asia. [*Id*. at ¶¶ 19-21.] Moreover, even though Prout was ultimately fired in Atlanta, he alleges that the "hostile" Invesco executive who instigated his termination was Lo, and that the decision was made before Prout was ever summoned to Atlanta. [*Id*. at ¶¶ 42, 73.] Accordingly, the SOX claim's territorial link to the United States is *de minimis*, at best. *See e.g.*, *Asadi*, 2012 U.S. Dist. LEXIS 89746, at *22 (territorial connection held inadequate where "the majority of events giving rise to the suit occurred in a foreign country.").

Third, even if Prout's reporting of the putative FCPA violation qualified as protected activity under SOX, and even if the alleged retaliation by Invesco was sufficiently grounded in the

United States to fall within SOX's territorial reach, the claim would *still fail* because the allegations in the SAC do not establish a causal connection between the protected activity and the adverse employment action. In the context of a retaliation claim, a plaintiff can plead a causal connection "directly, by alleging facts of retaliatory animus against him, or indirectly, either by showing a temporal relationship in which the protected activity was followed closely in time by discriminatory treatment, or by other circumstantial evidence." *Wang v. Palsimano*, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016) (internal quotations marks and citation omitted). Prout fails to do either. For instance, Prout has seemingly *tried* to allege that Lo exhibited retaliatory animus, by claiming that Lo "became increasingly hostile towards [him] almost immediately after he reported" the rumor regarding the $4,000 bottle of wine. [Proscia Second Suppl. Decl., Ex. O, at ¶ 73.] But the only example of this increased hostility cited in the SAC appears to be an incident that occurred over one month later, in late June 2014, when Lo "became irate" that a report Prout prepared "had minor formatting issues." [*Id*. at ¶ 25.] And Prout implies that "the true motivation for Mr. Lo's anger" on that occasion was Prout's use of vacation and personal days to take extensive time off in May and June, [*Id*. at ¶ 24], *not* Prout having "blown the whistle" on Sato in April. In any event, the more natural inference to be drawn from the SAC is that Lo was just irritated by Prout's lack of preparation since he admits there were "formatting issues."[8]

Furthermore, Prout fails to allege a causal connection through temporal proximity. In order for temporal proximity to establish causality, the intervening period between the protected activity and the adverse employment action must be "very close." *Dawson v. City of New York*, 2013 U.S. Dist. LEXIS 117744, at *47-48 (S.D.N.Y. Aug. 19, 2013). While there is no bright-line rule, courts

---

[8] It is worth noting that the SAC also omits any description of Prout's interactions with Lo prior to their conversation in April 2014. As such, there is no objective basis for a trier of fact to conclude that Lo actually became "increasingly hostile" toward Prout. Lo could have personally disliked Prout from the moment Prout began working under him in 2013.

13

within this Circuit have routinely held that gaps in excess of three to four months are fatal to an inference of causation based on temporal proximity. *Id*. at \*48 (collecting cases). Here, the gap between Prout's original report to Lo in April 2014 and his termination on November 3, 2014 was nearly seven months.

### B.    Prout Recovered for the Same Alleged Injury Through His Dodd-Frank Claim

Prout's SOX-based malpractice claim also fails because the Dodd-Frank claim he chose to settle with Invesco in November 2017 was *identical* to the SOX claim Prout allegedly "lost" due to the running of the statute of limitations. [Proscia Second Suppl. Decl., Ex. O, at ¶¶ 67-74, 111.] As noted in Defendants' prior submissions, Prout cannot recover twice for the same injury. *Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1063 (2d Cir. 1992); *Morales v. Kavulich & Assocs., P.C.*, 2018 U.S. Dist. LEXIS 44598, at \*9 (S.D.N.Y. Mar. 19, 2018).

Prout attempts to circumvent this basic rule by alleging that the expiration of the SOX claim cost him "substantial leverage in settlement negotiations," because the SOX claim "would have required Invesco to defend itself in a separate forum." [Proscia Second Suppl. Decl., Ex. O, at ¶ 120.]  This allegation is inadequate for a variety of reasons. For starters, it is pure conjecture. Prout does not even bother to identify the supposed "separate forum." Second, to the extent Prout is referring to an administrative proceeding before the Department of Labor, [*Id*., at ¶ 116], the allegation remains speculative because there is no basis to conclude that such a non-binding proceeding would have impacted Prout's ability to pursue his Dodd-Frank claim. Indeed, given that Dodd-Frank contains no exhaustion requirement, the absence of a separate administrative proceeding *could not* have affected the Dodd-Frank claim or caused Prout any pecuniary injury.

Third, the notion that Prout lost "substantial leverage in settlement negotiations" due to the expiration of the SOX claim is facially implausible, given that a whistleblower retaliation claim under Dodd-Frank entitles a plaintiff to recover greater damages than in a SOX claim, including

double back pay. [*Id*. at ¶ 111.] Here, according to Prout's *own calculations*, the Dodd-Frank claim was worth $12.2 million, [*Id*., Ex. S, at 24], versus just $6.1 million for the SOX claim. [*Id*., Ex. O, at ¶ 78.] Prout still had the better whistleblower retaliation claim, and all the leverage he needed.

Fourth, even if the expiration of the SOX claim had some adverse impact on pre-suit settlement negotiations, it cannot be said to have "effectively compelled" Prout *to settle* his Dodd-Frank claim for less than he believed it was worth. If we assume for the sake of argument that Prout was terminated by Invesco for engaging in protected SOX activity, then he would have had a viable claim under Dodd-Frank in November 2017. *See Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 155 (2d Cir. 2015). If Prout and/or Sanford Heisler did not think the proposed settlement he was getting from Invesco was adequate, he could have and should have commenced litigation. Just as he did with his FMLA claim, however, he chose to settle instead.

<u>**CONCLUSION**</u>

**WHEREFORE**, for the reasons stated in their original moving papers, first supplemental papers, reply papers and herein, Defendants respectfully request that this Court issue an Order dismissing Prout's Second Amended Complaint in its entirety with prejudice as a matter of law; and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
      May 17, 2018

                         **KAUFMAN DOLOWICH & VOLUCK, LLP**
                         *Attorneys for Defendants*

                         /s/ Anthony J. Proscia
                         Ivan S. Smith
                         Anthony J. Proscia
                         Adam M. Marshall
                         40 Exchange Place, 20th Floor
                         New York, New York 10005
                         T: (212) 485-9600

ND: 4818-8938-5062, v.  1