**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
ALEXANDER PROUT,

                Plaintiff/Counterclaim-Defendant,

   -against-

ANNE C. VLADECK & VLADECK, RASKIN
& CLARK, P.C.,

        Defendants/Counterclaim-Plaintiffs/
        Third-Party Plaintiffs,

   -against-

STEVEN J. KELLY, ESQ. and SANFORD HEISLER
SHARP, LLP,

        Third-Party Defendants.
------------------------------------------------------------------------X

**Case No.: 18-CV-260 (JSR)**

## OMNIBUS MEMORANDUM OF LAW SUBMITTED IN OPPOSITION TO THE THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS

| | |
|---|---|
| *Of Counsel*: | **KAUFMAN DOLOWICH & VOLUCK, LLP** |
| Anthony J. Proscia | 40 Exchange Place, 20th Floor |
| Adam M. Marshall | New York, New York 10005 |
| | T: (212) 485-9600 |
| | F: (212) 485-9700 |
| | E: AProscia@kdvlaw.com |
| |     AMarshall@kdvlaw.com |

*Attorneys for Third-Party Plaintiffs Vladeck, Raskin & Clark, P.C. and Anne C. Vladeck*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………..ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

POINT I
THE THIRD-PARTY COMPLAINT SHOULD BE SUSTAINED AS AGAINST KELLY ....... 1

    A.    Kelly's Self-Serving Affidavit Should be Disregarded Absent Discovery ........... 2

    B.    The Third-Party Complaint Adequately Alleges Minimum Contacts .................... 3

    C.    The Third-Party Complaint States a Plausible Contribution Claim ....................... 6

POINT II
THE THIRD-PARTY COMPLAINT SETS FORTH A FACIALLY PLAUSIBLE
COMMON LAW CONTRIBUTION CLAIM AS AGAINST SANFORD HEISLER ................. 9

    A.    The Doctrine of Law of the Case is Inapplicable  .................................................. 9

    B.    Sanford Heisler Misstates the Nature of Prout's Injury ........................................ 11

    C.    The Wisdom and Effect of Sanford Heisler's Negotiating Strategy
           are Factual Questions that Cannot be Resolved on a Motion to Dismiss ............ 12

    D.    Sanford Heisler's Advice to Settle with Invesco was Influenced
           by an Erroneous "Settle and Sue" Strategy............................................................ 14

    E.    Third-Party Plaintiffs' Assertion of a Comparative Negligence
           Affirmative Defense Does Not Bar Their Assertion
           of a Common Law Contribution Claim Against Sanford Heisler......................... 15

CONCLUSION............................................................................................................................ 16


# **TABLE OF AUTHORITIES**

*Cases*

*Ames Assocs. v. ABS Partners Real Estate LLC*,
2010 U.S. Dist. LEXIS 22365 (S.D.N.Y. 2010).................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009)................................................................................8

*Bank Leumi USA v. Ehrlich*,
98 F. Supp. 3d 637 (S.D.N.Y. 2015).................................................................................9

*Barnett v. Schwartz*,
47 A.D.3d 197, 848 N.Y.S.2d 663 (2d Dep't 2007).......................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007)................................................................................8

*Digital Realty Trust, Inc. v. Somers*,
138 S. Ct. 767 (2018).......................................................................................................13

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001)................................................................................................2

*Eastboro Found. Charitable Trust v. Penzer*,
950 F. Supp. 2d 648 (S.D.N.Y. 2013).............................................................................4

*Firestone v. Berrios*,
42 F. Supp. 3d 403 (E.D.N.Y. 2013) .............................................................................10

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005)............................................................................................16

*Ingraham v. Carroll*,
90 N.Y.2d 592 (N.Y. 1997) ..............................................................................................5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
673 F.3d 50 (2d Cir. 2012)................................................................................................3

*Maranga v. Vira*,
386 F. Supp. 2d 299 (S.D.N.Y. 2005)..............................................................................4

*McAnaney v. Astoria Fin. Corp.*,
665 F. Supp. 2d 132 (E.D.N.Y. 2009) .............................................................................9

*Melito v. Am. Eagle Outfitters, Inc.*,
2016 U.S. Dist. LEXIS 153912 (S.D.N.Y. Nov. 7, 2016) ............................................................10

*Millennium Import, LLC v Reed Smith LLP*,
104 A.D.3d 190, 958 N.Y.S.2d 375 ...........................................................................................15

*Nero v. Industrial Molding Corp.*,
167 F.3d 921 (5th Cir. 1999) ......................................................................................................13

*N.Y. Islanders Hockey Club, LLP v. Comerica Bank-Texas*,
115 F. Supp. 2d 348 (E.D.N.Y. 2000) .......................................................................................15

*Parke-Bernet Galleries, Inc. v. Robert A. Franklyn*,
26 N.Y.2d 13 (N.Y. 1970) ............................................................................................................5

*Persky v. Cendant Corp.*,
547 F. Supp. 2d 152 (D. Conn. 2008) ........................................................................................13

*Raquet v. Braun*,
90 N.Y.2d 177, 681 N.E.2d 404 (N.Y. 1997) ..............................................................................6

*Rosner v. Paley*,
65 N.Y.2d 736, 481 N.E.2d 553 (N.Y. 1985) ..............................................................................7

*Schauer v. Joyce*,
54 N.Y.2d 1, 429 N.E.2d 83 (N.Y. 1981) ..............................................................................7, 15

*Schur v. Porter*,
712 F. Supp. 1140 (S.D.N.Y. 1989) .............................................................................................5

*Troma Entm't, Inc. v. Centennial Pictures, Inc.*,
729 F.3d 215 (2d Cir. 2013) .........................................................................................................2

**<u>Statutes</u>**

CPLR 302(a) ......................................................................................................................3, 4, 5, 6

CPLR 1401 .................................................................................................................................6, 12

Fed. R. Civ. P. 12 .........................................................................................................................1, 10

Family Medical Leave Act .......................................................................................................4, 9, 11

Sarbanes-Oxley Act of 2002 ............................................................................................................11

Dodd-Frank Wall Street Reform and Consumer Protection Act ............................................12, 13

**PRELIMINARY STATEMENT**

Third-Party Plaintiffs, VLADECK, RASKIN & CLARK, P.C. ("VRC") and ANNE C. VLADECK ("Vladeck") (collectively, the "Third-Party Plaintiffs") respectfully submit this omnibus Memorandum of Law in Opposition to:

- Third-Party Defendant Steven J. Kelly, Esq.'s ("Kelly") motion to dismiss the Third-Party Complaint, pursuant to Fed. R. Civ. P. 12(b)(2) and (6); and

- Third-Party Defendant Sanford Heisler Sharp, LLP's ("Sanford Heisler" or "SHS") motion to dismiss the Third-Party Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

**ARGUMENT**

**POINT I**

**THE THIRD-PARTY COMPLAINT SHOULD BE SUSTAINED AS AGAINST KELLY**

Kelly seeks dismissal of the Third-Party Complaint on purported jurisdictional and substantive grounds. With respect to jurisdiction, Kelly contends that he lacks sufficient "minimum contacts" with the forum in order to justify his being hauled into the Southern District of New York. [Kelly Br. at 8-9.] Substantively, Kelly contends that the legal assistance and advice he rendered to Plaintiff Alexander Prout ("Plaintiff" or "Prout") concerning the contemplated lawsuit against Invesco Ltd. ("Invesco") is too insignificant to support a finding of liability against him on Third-Party Plaintiffs' common law contribution claim. [*Id*. at 15-16.] As demonstrated below, both arguments rest upon factual assertions that are not entitled to any credence at the pleading stage. Moreover, neither argument is supported by the applicable case law. Accordingly, the Third-Party Plaintiffs respectfully submit that Kelly's dismissal motion should be denied in its entirety, as a matter of law.

1

### A. Kelly's Self-Serving Affidavit Should be Disregarded Absent Discovery

Kelly first asserts that the Third-Party Complaint should be dismissed for lack of personal jurisdiction because "the only facts [Third-Party Plaintiffs] allege to support their claim of jurisdiction are *false*." [Kelly Br. at 5 (emphasis in original).] In support, Kelly relies on his own affidavit to dispute the accuracy of various factual allegations contained within the Third-Party Complaint. For instance, Kelly denies the allegation that he entered into a "joint representation agreement" with the Third-Party Plaintiffs regarding Prout's claims against Invesco, [Kelly Aff. at ¶¶ 13-14], and the allegation that Kelly "derived substantial benefits" from representing Prout in connection with such claims. [*Id*. at ¶ 12.]

This sort of factual challenge should be rejected given the procedural posture of the case. Where, as here, there has been zero discovery obtained from the movant, a plaintiff (or third-party plaintiff) seeking to defeat a motion to dismiss for lack of personal jurisdiction need only make out a *prima facie* showing that jurisdiction exists. *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). "In other words, a complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are 'legally sufficient allegations of jurisdiction.'" *Id*. (quoting *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010)). "Even if plaintiff's allegations and proffered evidence are controverted, the court must view those allegations and the evidence in the light most favorable to plaintiff." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

This rule applies with particular force under the present circumstances, where Kelly offers nothing besides his own self-serving words in an effort to rebut the factual assertions in the Third-Party Complaint. Given that the Third-Party Plaintiffs have made a *prima facie* showing that this Court has obtained personal jurisdiction over Kelly, *infra* Point I(B), Kelly's purported refutation of the allegations, by itself, is insufficient for Kelly to prevail on his jurisdictional argument.

2

**B.    The Third-Party Complaint Adequately Alleges Minimum Contacts**

Kelly's attack on the legal sufficiency of the Third-Party Complaint's jurisdictional allegations also misses the mark. As discussed below, New York's long-arm statute vests this Court with jurisdiction over Kelly in two ways.

*i.    CPLR 302(a)(1)*

First, Kelly's conduct falls within the ambit of CPLR 302(a)(1), which allows a court to exercise jurisdiction over a non-domiciliary sued for a cause of action arising from the transaction of business within New York or a contract to supply goods or perform services in New York. "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012). Here, the Third-Party Complaint alleges just that. Beginning on March 25, 2016 and continuing thereafter for over a year, Kelly and the Third-Party Plaintiffs coordinated with one another and rendered contemporaneous legal advice to Prout (a New York resident at that time) relating to the pursuit of his claims against Invesco. [Third-Party Complaint at ¶¶ 5, 6, 9, 62, 68, 71, 73-78, 83, 85-87, 100-109.] As early as March 26, 2016, Kelly was aware, and agreed, that Prout's contemplated lawsuit against Invesco would be venued in New York. [*Id*. at ¶¶ 74-75.]

Kelly's attempt to characterize his New York State contacts as "five telephone conference calls" with Plaintiff and the Third-Party Plaintiffs, [Kelly Br. at 10], is both factually implausible and legally immaterial for the purposes of obtaining long-arm jurisdiction. From a factual standpoint, the Third-Party Complaint does not purport to itemize each and every occasion on which Kelly rendered advice to Prout regarding whether and when to pursue litigation against Invesco. The Third-Party Plaintiffs have personal knowledge of only the conversations in which they took part. It is eminently plausible that Kelly discussed with Prout and rendered legal advice

with respect to his potential claims against Invesco on a regular basis (outside of the presence of the Third-Party Plaintiffs) given the *admitted* overlap in the job-related damages Prout was then seeking to recover in the New Hampshire Action.[1]  [*See* Kelly Aff. at ¶ 13; *see also* Third-Party Complaint at ¶ 77.]  At this preliminary stage, without discovery,[2] the Third-Party Plaintiffs are entitled to the benefit of the doubt as to the adequately pled jurisdictional allegations against Kelly.

Moreover, from a legal standpoint, there is no hard and fast rule as to how many telephone calls (or emails or letters) it takes to confer personal jurisdiction under CPLR 302(a)(1).  Rather, the focus is "the nature and quality, and not the amount of New York contacts" that must be considered.  *Eastboro Found. Charitable Trust v. Penzer*, 950 F. Supp. 2d 648, 658 (S.D.N.Y. 2013).  The communications must have been "related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'"  *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Willhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108, 112 (S.D.N.Y. 1993)).  Such is the case here.  Even when viewed in isolation, each of the conference calls cited in the Third-Party Complaint was important.  The call held on October 31, 2016 obviously had special significance since it resulted in the agreed-upon strategy – between Prout, the Third-Party Plaintiffs and Kelly – to defer Prout's commencement of an action against Invesco even though the two-year statute of limitations on Prout's claim for non-willful violations of the Family Medical Leave Act ("FMLA") would expire (the linchpin of Prout's malpractice claim against the Third-Party Plaintiffs, *infra* Point I(C)).  Throughout it all, Kelly used the calls

---

[1] Plaintiff commenced an action in the United States District Court for the District of New Hampshire, styled *Alexander and Susan Prout v. St. Paul's School*, under Case No. 1:16-CV-00225-(PB).

[2] During a teleconference on August 16, 2018, Your Honor agreed that documentary discovery within the third-party action shall be held in abeyance until the parties' appear before the Court.

as a means to project himself into a transaction (i.e., the potential Invesco lawsuit) that had its center of gravity in New York – where Prout then resided and where Prout's anticipated lawsuit against Invesco would be venued.  As such, Kelly's alleged New York contacts are sufficient to establish personal jurisdiction under CPLR 302(a)(1).  *See e.g.*, *Parke-Bernet Galleries, Inc. v. Robert A. Franklyn*, 26 N.Y.2d 13 (N.Y. 1970); *see also Schur v. Porter*, 712 F. Supp. 1140 (S.D.N.Y. 1989); *Liberatore v. Calvino*, 293 A.D.2d 217, 742 N.Y.S.2d 291 (N.Y. App. Div. 2002) (jurisdiction existed over a non-domiciliary, non-admitted attorney who rendered legal services into New York State prior to the commencement of a lawsuit).

> ii.     *CPLR 302(a)(3)*

Kelly's conduct also falls within the ambit of CPLR 302(a)(3)(ii), which vests a court with jurisdiction over a person or entity that "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  Here, the first prong of the analysis is easily satisfied.  As further discussed in Point I(C), *infra*, Kelly and the Third-Party Plaintiffs are in the same boat when it comes to having advised Prout to postpone litigation with Invesco on October 31, 2016 beyond the FMLA non-willful violations claim's two-year statute of limitations.  If that legal advice by the Third-Party Plaintiffs was negligent and caused Prout damages in New York (as Prout claims), then Kelly's same legal advice and recommendation also constitute malpractice.

Likewise, there is no question that Kelly should have reasonably expected that his legal advice to let the two-year statute of limitations on Prout's non-willful FMLA claim expire would have consequences for Prout in New York.  Again, Prout was a New York resident and the Invesco lawsuit was to be filed in state or federal court in Manhattan.  *See Ingraham v. Carroll*, 90 N.Y.2d 592, 598 (N.Y. 1997) (out-of-state defendant physician who misdiagnosed New York resident and

gave erroneous medical advice regarding decedent's treatment following her return to New York had reason to expect that his actions would have consequences within the state).

Finally, the Third-Party Complaint adequately alleges that Kelly receives substantial revenue through interstate commerce. [Third-Party Complaint at ¶¶ 7-8.] It is noteworthy that, while Kelly denies that he received substantial revenue from the legal services he rendered to Prout in New York, he concedes that he has earned substantial revenue from Prout outside Kelly's home state of Maryland. He specifically points to the settlement obtained in the New Hampshire Action. [*Id*. at ¶¶ 9, 12.][3] As set forth within the Third-Party Complaint, it was within the New Hampshire Action that Prout pursued job-related damages, which caused concern to the Third-Party Plaintiffs that Prout was "double dipping" on the damages he would be pursuing in an action against Invesco. [*Id*. at ¶¶ 76, 77, 78, 117.] At this preliminary stage, without any discovery from Kelly, Third-Party Plaintiffs should be accorded the benefit of every inference on this issue.

## C. The Third-Party Complaint States a Plausible Contribution Claim

Claims for contribution are controlled by CPLR 1401, which states that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among themselves whether or not an action has been brought or judgment had been rendered against the person from whom contribution is sought." *See also* Fed. R. Civ. P. 14(a). "[C]ontribution is available whether or not the culpable parties are allegedly liable for the injury under different theories, and the remedy may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors." *Raquet v. Braun*, 90 N.Y.2d 177, 183, 681 N.E.2d 404 (N.Y. 1997). "In determining whether a valid third-party claim for contribution exists, the critical issue is whether the third-party defendant owed a

---

[3] CPLR 302(a)(3) does not require that such revenue be derived from doing business in New York State.

6

duty to the plaintiff which was breached and which contributed to or aggravated plaintiff's damages." *Rosner v. Paley*, 65 N.Y.2d 736, 738, 481 N.E.2d 553 (N.Y. 1985); *Schauer v. Joyce*, 54 N.Y.2d 1, 5, 429 N.E.2d 83 (N.Y. 1981).

Kelly posits that the Third-Party Complaint fails to plead a claim for common law contribution against him for two reasons. First, Kelly contends that the Third-Party Complaint never sufficiently alleges that he rendered "real" legal advice to Prout during the October 31, 2016 conference call; it just says only that he was "okay" with the strategy proposed by the Third-Party Plaintiffs. [Kelly Br. 16-17.] This is a semantic, meaningless distinction. As set forth in the Third-Party Complaint, Prout specifically proposed including Kelly on the October 31, 2016 teleconference. [Third-Party Complaint at ¶ 100.] It is *more than* plausible to infer that (i) Kelly was part of his legal team with respect to his potential claims against Invesco; (ii) Prout wanted Kelly's legal advice on what was discussed with respect to "timing" of an action against Invesco [*Id*. at ¶ 99]; and (iii) Kelly did in fact provide legal advice to Prout during that teleconference concerning the timing of said suit. By conceding that he agreed with the Third-Party Plaintiffs' recommended litigation strategy and was "okay with the decision" to defer litigation with Invesco, notwithstanding the expiration of the non-willful FMLA claim, Kelly effectively adopted the Third-Party Plaintiffs' advice as his own and his concurrence therewith constituted further legal advice concerning the litigation strategy.[4]

---

[4] The October 31, 2016 teleconference and the alleged negligent advice during it is the primary basis for Prout's malpractice claim against the Third-Party Plaintiffs. Accordingly, that is why it is alleged, with sufficient detail, the extent of Kelly's involvement (including the provided legal advice and recommendation) during that call. It should be noted, however, that Kelly was involved in each and every decision associated with Prout's potential claims against Invesco, including, but not limited to, (i) the determination of whether Prout should secure residency within New York so that he could pursue an action against Invesco in Manhattan; and (ii) the determination of whether Prout would commence his action against Invesco as a "John Doe" in order to maintain anonymity.

Second, Kelly argues that if Prout "agreed not to commence an action against Invesco within the statute of limitations for a non-willful FMLA claim, there would be no viable legal malpractice or contribution claim against Kelly since [Prout] would have provided his informed consent not to pursue a non-willful FMLA claim before the statute of limitations expired." [Kelly Br. at 17.] This is not a ground for dismissal either. As Your Honor may recall, the Third-Party Plaintiffs sought dismissal of Prout's legal malpractice claim against them on the same argument. [ECF 17, Point III.] Your Honor denied the Third-Party Plaintiffs' dismissal motion. [ECF 44.] As Fed. R. Civ. P. 8 permits, the Third-Party Plaintiffs' contribution claim against Kelly is pled in the alternative. The Third-Party Plaintiffs *should not* be held liable for legal malpractice because their advice was reasonable and because Prout provided informed consent. However, if they are, then so too must Kelly – as a concurrent tortfeasor[5] – be liable for that same legal advice and recommendation. [Third-Party Complaint at ¶¶ 176-82.]

For the foregoing reasons, the Third-Party Plaintiffs respectfully submit that the Third-Party Complaint sets forth a facially plausible claim for common law contribution as against Kelly, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937 (2009), requiring denial of his motion to dismiss.

---

[5] Third-Party Plaintiffs are not required to plead that Kelly was involved in each and every alleged negligent act as asserted by Prout against them for a common law contribution claim to be plausible against Kelly. Thus, Kelly's assertion that he was not involved at the beginning of VRC's representation of Prout or at the end when he was represented by Sanford Heisler is irrelevant. The Third-Party Plaintiffs need only plead that an act by Kelly (here, as a concurrent tortfeasor with respect to the legal advice and decision to forego a lawsuit by Prout against Invesco within the non-willful violations of the FMLA two-year statute of limitations) plausibly contributed to Prout's alleged damages, and they have done so. *Raquet*, 90 N.Y.2d at 183; *Rosner*, 65 N.Y.2d at 738; *Schauer*, 54 N.Y.2d at 5.

8

**POINT II**

**THE THIRD-PARTY COMPLAINT SETS FORTH A FACIALLY PLAUSIBLE COMMON LAW CONTRIBUTION CLAIM AS AGAINST SANFORD HEISLER**

**A.     The Doctrine of Law of the Case is Inapplicable**

Sanford Heisler first asserts that the Third-Party Plaintiffs' contribution claim is barred under the "law of the case" doctrine, citing this Court's prior ruling, in connection with the Third-Party Plaintiffs' motion to dismiss, that Prout had plausibly alleged that he was "effectively compelled" to settle due to the Third-Party Plaintiffs' negligence.  [Sanford Heisler Br. at 12.]  Sanford Heisler also points to this Court's observation, in a footnote in the same order, that "[t]here is nothing Sanford Heisler could have done to revive Prout's non-willful FMLA claims."  [*Id.*]

Neither of these putative "conclusions" bars the contribution claim against Sanford Heisler.  As a threshold matter, the law of the case doctrine is inapplicable where the issue in dispute was previously decided under a less favorable standard of review for the non-movant.  *See e.g.*, *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 142 (E.D.N.Y. 2009) ("[B]ecause of the divergent standard of review applicable to motions to dismiss and motions for summary judgment, the law of the case doctrine is inapposite to the Court's analysis of whether, after the close of discovery, genuine issues of fact have been raised which survive summary judgment."); *Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 647 (S.D.N.Y. 2015).  In this case, the standard of review applied to the Third-Party Plaintiffs' earlier motion to dismiss was the *strictest* possible standard.  All of Prout's factual allegations were presumed to be true and Prout was granted the benefit of every inference.  [*See* ECF 44 at 20-21.]  Now the shoe is on the other foot; it is the Third-Party Plaintiffs' and their allegations that are entitled to the benefit of every inference and presumption.  Given this extreme divergence, the doctrine of "law of the case" cannot be applied.

The cases relied upon by Sanford Heisler do not suggest otherwise. In *Melito v. Am. Eagle Outfitters, Inc.*, 2016 U.S. Dist. LEXIS 153912 (S.D.N.Y. Nov. 7, 2016), the court applied the "law of the case" doctrine to preclude the third-party defendant (Experian) from relitigating various issues on a Rule 12(b)(6) motion to dismiss a third-party complaint, where the same issues had already been decided against Experian in the context of the third-party plaintiff's motion for leave to file *that very pleading*. *Id*. at *5-6. The court specifically observed that the standard of review on a motion for leave to file a third-party complaint under Rule 14 was "identically-worded" to that used a motion to dismiss under Rule 12(b)(6). *Id*. Similarly, in *Firestone v. Berrios*, 42 F. Supp. 3d 403 (E.D.N.Y. 2013), the court applied the "law of the case" doctrine to bar the defendants from relitigating the facial viability of the plaintiffs' claims, in a motion for judgment on the pleadings, where the claims had earlier been analyzed and deemed sufficiently pled on a motion to amend. *Id*. at 412-13. As in *Melito*, the *Firestone* court emphasized the analogous standard of review applied to the earlier motion. *Id*. at 413 ("Justice Parga engaged in a lengthy and in-depth analysis that was not a far cry from a finding of legal sufficiency. Moreover, many courts have recognized that while the procedural vehicles of a motion to amend and a motion to dismiss are distinct, they nevertheless operate under the same standard."). Again, this case is different. The standard of review applied to the Third-Party Plaintiffs' earlier motion to dismiss against Prout could not be *more* divergent from the standard that must be applied to Sanford Heisler's motion.

Sanford Heisler's bid to invoke the "law of the case" doctrine also fails because the *issues* decided on the Third-Party Plaintiff's earlier motion to dismiss are different from those presented in the Third-Party Complaint. For example, Sanford Heisler posits that it cannot be held liable for contribution if the Third-Party Plaintiffs' supposed negligence "effectively compelled" Prout to settle his claims against Invesco. [Sanford Heisler Br. at 12.] Yet a claim for legal malpractice

10

does not require a finding that the defendant was *the sole* proximate cause of the plaintiff's injury. The defendant-attorney's conduct need only have been "a" proximate cause. *See e.g.*, *Barnett v. Schwartz*, 47 A.D.3d 197, 205, 848 N.Y.S.2d 663 (2d Dep't 2007). Thus, even assuming *arguendo* that the Third-Party Plaintiffs were negligent in allowing the statutes of limitation on Prout's SOX and non-willful FMLA claims to expire, and that such negligence "effectively compelled" Prout to settle his remaining viable claims against Invesco, those assumptions would not preclude a legal malpractice claim against Sanford Heisler – or by extension a contribution claim – based upon Sanford Heisler's mishandling of the settlement negotiations with Invesco. That is what the Third-Party Complaint alleges; that Sanford Heisler exacerbated, and thus contributed to, Prout's supposed injury.

B.      **Sanford Heisler Misstates the Nature of Prout's Injury**

The primary argument made by Sanford Heisler is that contribution is unavailable here because the injury Prout complains of is "separate and distinct" from the harm allegedly caused by Sanford Heisler. [Sanford Heisler Br. at 18.] According to Sanford Heisler, "the injury complained of by Prout against the [Third-Party Plaintiffs] is the value of the lost non-willful FMLA and SOX claims due to the [Third-Party Plaintiffs'] failure to timely file or otherwise preserve those two claims," whereas the harm Sanford Heisler is alleged to have caused is the loss of "some amorphous greater amount of recovery on the remaining viable claims." [*Id.*]

This is simply inaccurate. As Sanford Heisler well knows (after all they represent Prout in this action), Prout has never parsed his claims against Invesco in this manner. Instead, Prout alleged that the supposed "loss" of his non-willful FMLA claim and whistleblower retaliation claim under SOX cost him "substantial leverage in negotiations" to resolve all the claims Prout may have had against Invesco for terminating his employment in November 2014 (i.e., a single wrongful act). [SAC at ¶¶ 120-21.] That is also how this Court has viewed Prout's theory. The

11

Court previously characterized the "lost" claims as "bargaining detriments" that purportedly compelled Prout to settle his two remaining viable claims against Invesco and dragged down the *overall* value of the pre-suit settlement. [ECF 44 at 31-32.] Moreover, in the order denying the Third-Party Plaintiffs' motion for reconsideration, this Court reiterated that Prout's injury has to be viewed holistically, as the loss in value of his entire "case" against Invesco. [ECF 67 at 8-9.]

Critically, this Court observed that "Prout's remaining claims for a willful violation of the FMLA and for retaliation under Dodd-Frank are relevant . . . to the issue of damages." [*Id*. at 7.] Only Sanford Heisler represented Prout and rendered advice with respect to those "remaining claims." Thus, if Prout's "remaining claims" are relevant to determining the extent of Prout's damages (i.e., his injury), then it necessarily follows that Sanford Heisler's handling – or mishandling – of those claims is an appropriate basis for the Third-Party Plaintiffs' contribution claim against it under CPLR 1401.

**C.     The Wisdom and Effect of Sanford Heisler's Negotiating Strategy
        are Factual Questions that Cannot be Resolved on a Motion to Dismiss**

Sanford Heisler next argues, in effect, that the Third-Party Plaintiffs' contribution claim should be dismissed because Sanford Heisler acted prudently in advising Prout to enter into a pre-suit settlement with Invesco and because it is entirely speculative to assume that Prout could have achieved a better outcome if Sanford Heisler had acted differently. [Sanford Heisler Br. at 15, 19-20.] We address each point in turn.

First, while Sanford Heisler is correct that an attorney's "selection of one among several reasonable courses of action" does not constitute legal malpractice, [*Id*. at 14], there is *already* an ample basis in the record, especially at this pleading stage, to question the reasonableness of Sanford Heisler's decision-making. As noted above, Prout's theory of malpractice and damages is predicated on an alleged loss of bargaining power during the pre-suit settlement negotiations

12

with Invesco.  [*See* ECF 44 at 31-32.]  Given this tremendous focus on bargaining power, Sanford Heisler's decision to submit a mediation statement *to Invesco* which cut Prout's settlement demand down to *half* of his claimed damages (from $12.2 million to $6.1 million), before negotiations had even begun, is genuinely inexplicable.  [Proscia Decl., Ex. A at 25.]  It is hard to imagine a more glaring sign of weakness when one considers "the realities of hard bargaining."  [ECF 44 at 31.]

Lest Sanford Heisler suggest otherwise, its decision to *unilaterally* cut Prout off at the knees on the eve of the mediation cannot be rationalized by concern over the Supreme Court's then-pending decision in *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767 (2018).  Even if Sanford Heisler had advised Prout to be ready to accept less because of uncertainty over the future viability of his Dodd-Frank claim (a supposition outside the scope of the pleading and not entitled to any deference), there was no need to telegraph that same capitulation to its adversary.

Moreover, *Digital Realty* and the Dodd-Frank claim notwithstanding, "double damages" would have been equally attainable on Prout's still-viable willful FMLA claim.  *See e.g.*, *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999) ("Doubling an award is the norm under the FMLA, because a plaintiff is awarded liquidated damages in addition to compensation lost."); *Persky v. Cendant Corp.*, 547 F. Supp. 2d 152, 164 (D. Conn. 2008) ("Under the FMLA, 'double damages are the norm, single damages the exception.'").  The fact that the willful FMLA claim *migh*t have been more "challenging" for Prout to prove, [Sanford Heisler Br. at 16], did not make it a good idea for Sanford Heisler to signal to Invesco and its attorneys that Prout had no intention of litigating the claim in the event Invesco refused to offer a reasonable settlement.

Conceding all leverage stemming from the prospect of pursuing "double damages" is not reasonable.  It is entirely plausible that Sanford Heisler's actions undercut Prout's negotiating position and caused him to lose negotiating leverage that he would have had at the mediation "but for" Sanford Heisler's unprompted fifty-percent (50%) reduction in his demand to Invesco.  The

Third-Party Plaintiffs have therefore set forth a facially plausible common law contribution claim against Sanford Heisler as Prout's successor counsel during the pre-suit, voluntary mediation and subsequent settlement. Sanford Heisler, as a successor tortfeasor, is not entitled to dismissal of the Third-Party Complaint.

D. **Sanford Heisler's Advice to Settle with Invesco was Influenced by an Erroneous "Settle and Sue" Strategy**

Aside from undercutting Prout at a crucial juncture in his settlement negotiations with Invesco, it has grown clearer by the day that Sanford Heisler's settlement advice to Prout was motivated, at least in part, by erroneous assumptions regarding what Prout would be required to prove in a future legal malpractice action against the Third-Party Plaintiffs.

In short, it appears Sanford Heisler believed that Prout could simply subtract the sum paid by Invesco from the $3 million estimated value allegedly proffered by Vladeck, [ECF 44 at 11], and force the Third-Party Plaintiffs to pay the difference without regard for the actual merits of the claims against Invesco.[6] In fact, Prout must *prove* that he would have obtained a better outcome on his underlying claims "but for" the Third-Party Plaintiffs' alleged negligence, by establishing a meritorious "case within a case." [ECF 44 at 22.] By advising Prout that he could recover against the Third-Party Defendants irrespective of the merit of his underlying claims, Sanford Heisler was negligent. That negligence was a proximate cause of Prout's decision to accept a lesser settlement from Invesco, resulting in a contribution toward Prout's claimed damages.

---

[6] Instead, Prout and Sanford Heisler sought to extort the Third-Party Plaintiffs and their professional liability insurer by threatening to embarrass the Third-Party Plaintiffs and tarnish their reputation. [*See* ECF 80 at 285, 290-92.]

14

**E.     Third-Party Plaintiffs' Assertion of a Comparative Negligence
Affirmative Defense Does Not Bar Their Assertion of a
<u>Common Law Contribution Claim Against Sanford Heisler</u>**

Sanford Heisler also incorrectly argues that the Third-Party Plaintiffs' contribution claim against it is barred by their assertion of a comparative negligence affirmative defense against Prout. In essence, Sanford Heisler asserts that "any allegedly culpable conduct by Sanford Heisler, acting as Prout's agent from June 2017 until December 2017, is imputable to Prout." [Sanford Heisler Br. At 22 (citing *N.Y. Islanders Hockey Club, LLP v. Comerica Bank-Texas*, 115 F. Supp. 2d 348, 351 (E.D.N.Y. 2000).] In support of this proposition, Sanford Heisler relies upon *Ames Assocs. v. ABS Partners Real Estate LLC*, 2010 U.S. Dist. LEXIS 22365 (S.D.N.Y. 2010), and two antecedent cases.

However, of the three cases relied upon by Sanford Heisler, only *N.Y. Islanders Hockey Club, LLP* engages in an actual analysis of the issue. Sanford Heisler's reliance on *N.Y. Islanders Hockey Club, LLP* is misplaced based upon that analysis. Indeed, *N.Y. Islanders Hockey Club, LLP* concedes that the New York Court of Appeals case law expressly allows a defendant/third-party plaintiff to pursue a comparative negligence affirmative defense and an impleader action for common law contribution at the same time. *See N.Y. Islanders Hockey Club, LLP*, 115 F. Supp. 2d at 351 (citing *Schauer*, 54 N.Y.2d 1). Acknowledging the dual course of comparative negligence affirmative defense/contribution third-party claim permitted by *Schauer*, the *N.Y. Islander Hockey Club, LLP* court sets forth factors that distinguish the two cases. *N.Y. Islanders Hockey Club, LLP*, 115 F. Supp. 2d at 351-52. Those distinguishing factors are inapplicable herein. Accordingly, New York's highest court has addressed this issue in *Schauer*[7] and it is

---

[7] Case law from New York's First Department, Appellate Division further demonstrates that a defendant/third-party plaintiff is not barred from pursuing a dual track of a comparative negligence affirmative defense and a common law contribution claim simultaneously. *Millennium Import, LLC v Reed Smith LLP*, 104 A.D.3d 190, 195-196, 958 N.Y.S.2d 375 (N.Y. App Div.

15

respectfully submitted that this Court is bound by that substantive determination on the issue. *DiBella v. Hopkins*, 403 F.3d 102, 110 (2d Cir. 2005).

## CONCLUSION

**WHEREFORE**, Defendants-Third-Party Plaintiffs VLADECK, RASKIN & CLARK, P.C. and ANNE C. VLADECK respectfully request that this Court issue an Order: (i) denying Third-Party Defendant Steven J. Kelly, Esq.'s motion for dismissal of the common law contribution claim asserted against him as a concurrent tortfeasor in the Third-Party Complaint in its entirety; (ii) denying Third-Party Defendant Sanford Heisler Sharp, LLP's motion for dismissal of the common law contribution claim asserted against it as a successor tortfeasor in the Third-Party Complaint in its entirety; and (iii) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 27, 2018

**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Attorneys for Defendants-Third-Party Plaintiffs*

*/s/ Anthony J. Proscia*
Anthony J. Proscia
Adam M. Marshall
40 Exchange Place, 20th Floor
New York, New York 10005
T: (212) 485-9600

ND: 4819-0038-0017

---

2013) ("where, as here, a defendant charged with legal malpractice has a viable claim against other law firms that represented its client for concurrent or successive malpractice contributing to the client's damages, the defendant law firm is not necessarily "afforded all the protection to which it is entitled" by the affirmative defense of comparative negligence. On the contrary, where several law firms allegedly participated in giving the advice that led to the plaintiff's damages, the sole law firm named as a defendant must be entitled to bring the other law firms in as parties to the action to ensure that it has the ability to fully protect its rights.").