```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
ALEXANDER PROUT,                            :
                                            :              .1
        Plaintiff,                          :
                                            :
        -v-                                 :
                                            :
ANNE C. VLADECK & VLADECK, RASKIN           :
& CLARK, P.C.,                              :
                                            :
        Defendants.                         :
------------------------------------------x
ANNE C. VLADECK & VLADECK, RASKIN           :      18 Civ. 260 (JSR)
& CLARK, P.C.,                              :
                                            :      OPINION AND ORDER
        Counterclaim and                    :
        Third-Party Plaintiffs,             :
                                            :
        -v-                                 :
                                            :
ALEXANDER PROUT,                            :
                                            :
        Counterclaim Defendant,             :
                                            :
        -and-                               :
                                            :
STEVEN J. KELLY, ESQ. and SANFORD           :
HEISLER SHARP, LLP,                         :
                                            :
        Third-Party Defendants.             :
------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

JED S. RAKOFF, U.S.D.J.

Before the Court are the motions of Steven J. Kelly, Esq.

and Sanford Heisler Sharp, LLP to dismiss the Third-Party

Complaint of Anne C. Vladeck and Vladeck, Raskin & Clark, P.C.

(together, "VRC"). ECF Nos. 70, 74. Previously, plaintiff

Alexander Prout brought an action against VRC for legal

malpractice, in which Prout alleged that VRC negligently let the

1

statutes of limitations lapse on Prout's claims against his
former employer, Invesco Ltd., for non-willful violation of the
Family and Medical Leave Act ("FMLA") and for retaliation under
the Sarbanes-Oxley Act ("SOX"). ECF No. 32. By Order and Opinion
dated June 10 ("June 10 Order"), ECF No. 44, this Court denied
VRC's motion to dismiss Prout's malpractice claim, and by
Memorandum Order dated July 29 ("July 29 Order"), ECF No. 67,
this Court denied VRC's related motion for reconsideration.

VRC now brings contribution claims against Kelly and
Sanford Heisler. ECF No. 48. VRC alleges that Kelly acted as
concurrent counsel to VRC with respect to Prout's non-willful
FMLA claim, and that to the extent VRC was negligent in allowing
the statute of limitations on this claim to lapse, Kelly was
negligent as well. VRC alleges that Sanford Heisler acted as
subsequent counsel with respect to Prout's still-viable claims
for willful violation of the FMLA and retaliation under the
Dodd-Frank Act, and that to the extent VRC was negligent in
letting the statutes of limitations lapse on Prout's non-willful
FMLA and SOX claims, Sanford Heisler was negligent in settling
Prout's willful FMLA and Dodd-Frank claims, rather than
litigating them.

Sanford Heisler and Kelly both move to dismiss the Third-
Party Complaint for failure to state a claim. See Fed. R. Civ.
P. 12(b)(6). Kelly also moves to dismiss the Third-Party

2

Complaint for lack of personal jurisdiction. See id. 12(b)(2).
For the reasons stated below, Kelly and Sanford Heisler's
motions to dismiss are granted.

## **Background**

Familiarity with all prior proceedings is here assumed. The
pertinent factual allegations, drawn from the Third-Party
Complaint and viewed in the light most favorable to VRC, are as
follows:

In May 2014, Prout contacted VRC seeking legal
representation to resolve a dispute with his then-employer,
Invesco. Third-Party Complaint ("Third-Party Comp.") ¶¶ 23-24,
ECF No. 48. Prout and VRC entered into an attorney-client
relationship, id. ¶¶ 25-26, and between May and November 2014,
Prout sought to leave Invesco and sought a severance package
from Invesco, id. ¶ 27. On November 4, 2014, Invesco terminated
Prout's employment. Id. ¶ 29.

In the weeks following Prout's termination, VRC
communicated with Prout and Invesco about two options that
Invesco presented to Prout: voluntary resignation or termination
for cause. Id. ¶ 31. VRC advised Prout regarding potential
claims he had against Invesco for violations of the FMLA, SOX,
and Dodd-Frank. Id. ¶ 34. VRC notified Prout that if he was
going to pursue a whistleblower claim under SOX, he needed to
file a complaint with the Department of Labor within 180 days of

3

his termination. Id. ¶ 35. Prout nevertheless advised VRC that he did not want to pursue a SOX claim at that time. Id. ¶ 36. VRC was also prepared to proceed with an action against Invesco for alleged violations of the FMLA, id. ¶ 48, but Prout repeatedly delayed in authorizing VRC to bring the action, because Prout was focusing on civil and criminal proceedings arising out of his daughter's being the victim of a sexual assault at the St. Paul's School in New Hampshire, see id. ¶¶ 49-55.

In October 2015, Prout advised VRC that he had retained counsel in his daughter's civil case against St Paul's,[1] id. ¶ 61, and he requested that VRC "coordinate" with his other attorneys, including Kelly, id. ¶ 62. VRC alleges that it entered into a "joint representation agreement" with Kelly during a March 2016 conference call, and that VRC and Kelly discussed Prout's pursuit of his claims against Invesco. Id. ¶¶ 68-76. The parties also discussed the relationship between Prout's Invesco claims and his daughter's case, as VRC was concerned that the job-related damages Prout sought in his daughter's case might overlap with those he would seek from Invesco. Id. ¶¶ 77-78. In the following months, VRC, Prout, and Kelly had multiple calls in which they discussed Prout's

---

[1] See Prout et al v. St. Paul's School, No. 16-cv-225-PB (D. N.H.).

4

settlement attempts with Invesco, and in which, it is alleged, "Kelly provided legal services and/or legal advice to Prout concerning his anticipated claims against Invesco." Id. ¶ 83.

On October 24, 2016, Prout advised VRC that Morgan Stanley (Prout's then employer) was investigating whether Prout had taken proprietary documents and information from Invesco. Id. ¶ 91. A week later, Prout had a call with VRC and Kelly, during which VRC advised that if Prout brought an action against Invesco at that time, Invesco might assert counterclaims based on the behavior being investigated. Id. ¶ 103. VRC also advised that Morgan Stanley might learn Prout had been dishonest with them during their investigation and might terminate Prout for cause. Id. ¶ 104. Prout decided as a result of these concerns that he should defer commencement of his action against Invesco, even though it would mean letting the statute of limitations lapse on his non-willful FMLA claim. Id. ¶¶ 105-06. Kelly stated that he was "okay with the decision." Id. ¶ 106.

Later, in May 2017, VRC held a conference call with Prout and Kelly during which the parties discussed obstacles and timing relating to Prout's remaining claims against Invesco for willful violation of the FMLA and retaliation under Dodd-Frank. Id. ¶¶ 113-15. Kelly subsequently contacted Sanford Heisler to see whether the firm would represent Prout in his claims against Invesco, and Sanford Heisler agreed. Id. ¶¶ 122-23. Prout

subsequently ended VRC's representation, id. ¶ 125, and he engaged Sanford Heisler, id. ¶ 127. Sanford Heisler then contacted Invesco on Prout's behalf and settled Prout's willful FMLA and Dodd-Frank claims for $1.75M. Id. ¶¶ 129-37.

Following his settlement with Invesco, Prout — through Sanford Heisler — accused VRC for the first time of mishandling his claims against Invesco. Id. ¶¶ 155-58. Sanford Heisler set forth the basis of Prout's malpractice claim and told VRC that it should settle because VRC's insurance carrier would cover the costs of doing so. Id. ¶¶ 157, 159. Sanford Heisler also threatened to sue VRC in order to tarnish VRC's reputation within the legal community. Id. ¶ 160. In setting forth the basis of Prout's malpractice claim, Sanford Heisler relied on Kelly as an independent witness to VRC's conduct, even though Kelly was in negotiations to join Sanford Heisler, id. ¶¶ 162-63, and ultimately did join Sanford Heisler, id. ¶ 164.

In its Third-Party Complaint, VRC now seeks contribution from Kelly and Sanford Heisler. Id. ¶¶ 168-84, 185-208. VRC alleges that Kelly acted as its concurrent counsel with respect to Prout's claims against Invesco, and that to the extent VRC was negligent in allowing the statute of limitations to lapse on Prout's non-willful FMLA claim,[2] Kelly was negligent as well. See

---

[2] The Third-Party Complaint does not allege that Kelly is liable for allowing the statute of limitations to lapse on Prout's SOX

6

id. ¶¶ 169-83. In addition, VRC alleges that Sanford Heisler acted as its successor counsel, and that to the extent VRC was negligent in handling Prout's non-willful FMLA and SOX claims, Sanford Heisler was also negligent in settling Prout's willful FMLA and Dodd-Frank claims. See id. ¶¶ 186-207. VRC alleges that Prout could have recovered more on his willful FMLA and Dodd-Frank claims than on his non-willful FMLA and SOX claims, and that Sanford Heisler is therefore the cause of any damages Prout incurred. See id. ¶¶ 200, 202, 204-07.

## Analysis

Sanford Heisler and Kelly move to dismiss the Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Kelly also moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

### I. Sanford Heisler's Motion to Dismiss under 12(b)(6)

In order to survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[3] "A claim has facial

---

claim. The likely explanation for this omission is that Prout was required to file a complaint with the Department of Labor within 180 days of his termination in order to preserve his SOX claim, Third-Party Compl. ¶ 35, while Kelly was not retained until a year after Prout's termination, id. ¶ 61.

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, footnotes, and citations are omitted.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Here, VRC has brought a claim for contribution against Sanford Heisler. Under New York law, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them." N.Y. C.P.L.R. 1401 (emphasis added). The law "applies not only to joint tort-feasors, but also to concurrent, successive, independent, alternative, and even intentional tort-feasors." Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley, 517 N.E.2d 1360, 1364 (N.Y. 1987). For legal malpractice actions, "the critical issue is whether the third-party defendant owed a duty to the plaintiff which was breached and which contributed to or aggravated plaintiff's damages." Rosner v. Paley, 481 N.E.2d 553, 554 (N.Y. 1985); see Schauer v. Joyce, 429 N.E.2d 83, 84 (N.Y. 1981) ("The question is whether the third-party complaint . . . alleges negligence . . . that could have contributed to this loss.").

8

### 1. **Same Injury**

There are multiple problems with VRC's contribution claim
against Sanford Heisler. The first and most obvious is that VRC
fails to allege that Sanford Heisler is "subject to liability
for damages for the same . . . injury" as VRC. As Sanford
Heisler correctly notes, "Prout's injury as against [VRC] is
premised upon the lost value of his non-willful FMLA and SOX
claims," whereas "the injury for which [VRC] seeks contribution
from Sanford Heisler is [the] . . . value of a greater recovery
than was achieved for settling the remaining viable claims
sounding in willful violation of the FMLA and retaliation in
violation of Dodd-Frank." Memorandum of Law Submitted in Support
of Third-Party Defendant Sanford Heisler Sharp, LLP's Motion to
Dismiss the Defendant/Third-Party Plaintiff's Third-Party
Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), at 13 ("Sanford
Heisler MTD"), ECF No. 72. Even assuming arguendo that Sanford
Heisler was negligent in settling Prout's willful FMLA and Dodd-
Frank claims, this negligence would have no bearing on its
liability for Prout's loss of his non-willful FMLA and SOX
claims.

VRC responds that Sanford Heisler misstates the nature of
Prout's injury, because "Prout has never parsed his claims
against Invesco in [the] manner" suggested by Sanford Heisler.
Omnibus Memorandum of Law Submitted in Opposition to the Third-

9

Party Defendants' Motions to Dismiss 11 ("VRC Opp."), ECF
No. 82. Instead, VRC argues, this "Court previously
characterized the 'lost' claims as 'bargaining detriments' that
purportedly compelled Prout to settle his two remaining viable
claims against Invesco and dragged down the overall value of the
pre-suit settlement." Id. at 12 (quoting June 10 Order 31-32).
Given this Court's observation that "Prout's remaining claims
for a willful violation of the FMLA and for retaliation under
Dodd-Frank are relevant . . . to the issue of damages," id.
(quoting July 29 Order 7), VRC argues, "it necessarily follows
that Sanford Heisler's handling . . . of those claims is an
appropriate basis for the Third-Party Plaintiffs' contribution
claim against it," id.

VRC misunderstands this Court's prior Orders and the law.
As the Court made clear in its July 29 Order, VRC's liability
turns not on whether its negligence caused Prout to settle his
still-viable willful FMLA and Dodd-Frank claims, but "only [on]
whether [its] negligence caused Prout to suffer a loss relating
to his non-willful FMLA and SOX claims." July 29 Order 7. By
insisting that "Prout's injury has to be viewed holistically, as
the loss in value of his entire 'case' against Invesco," VRC
Opp. 12, VRC misinterprets the Court's statement that Prout's
injury depends on "whether [he] would have been better off if he
had pursued all four of his claims, rather than pursuing only

10

two," July 29 Order 8-9. This statement does not mean that
Prout's injury is "the loss in value of his entire 'case.'" It
means that Prout's injury - which is the loss in value of his
non-willful FMLA and SOX claims - can be measured by comparing
the value of his case with and without his time-barred claims.[4]

How to measure the value of Prout's case with and without
his time-barred claims is of course an open factual question at
this point in the litigation. In his Second Amended Complaint,
Prout alleges that his case was worth $3 million plus attorneys'
fees prior to the loss of his non-willful FMLA and SOX claims,
and $1.75 million afterwards. ECF No. 32 ¶ 120. VRC, by
contrast, alleges that Prout's case was worth more than $1.75
million after he lost his non-willful FMLA and SOX claims,
because Sanford Heisler should have litigated Prout's remaining
claims instead of settling them. See Third-Party Compl. ¶¶ 199,
201; see also VRC Opp. 12-14.[5] Even if VRC proves that Sanford
Heisler settled Prout's remaining claims for less than those
claims were worth, however, VRC will not have proved that
Sanford Heisler is liable for the loss of Prout's non-willful

---

[4] This is further confirmed by the Court's statement that
"Prout's remaining claims for a willful violation of the FMLA
and for retaliation under Dodd-Frank are relevant only to the
issue of damages." July 29 Order 7.

[5] New York law recognizes a distinction between the amount paid
to settle a claim and the amount the claim is actually worth.
See, e.g., Fusco v. Fauci, 749 N.Y.S.2d 715 (1st Dep't 2002).

11

FMLA and SOX claims. Instead, it will have proved only that the value of Prout's lost claims is less than he alleges, because the value of his case without those claims is greater than he alleges.

The case law is helpful in illustrating when two parties are, and are not, liable for the same injury. In Schauer v. Joyce, for example, the plaintiff, Schauer, alleged that her former divorce lawyer, Joyce, "caused her to lose alimony and counsel fees through a variety of actions and omissions, particularly the filing of a false affidavit of regularity with Supreme Court that caused the partial vacatur of [her] divorce judgment." 429 N.E.2d 83, 84 (N.Y. 1981). Joyce then impleaded Schauer's successor counsel, Gent, alleging that "Gent negligently failed to seek reinstatement of the vacated alimony award or to make any other application to obtain alimony for the period prior to the vacatur." Id. The Appellate Division held that Joyce could not implead Gent, because "there was nothing alleged that could make Gent even partially liable for Mrs. Schauer's loss of alimony." Id. The Court of Appeals reversed, however, ruling that there was "an ample basis for holding that the alleged negligence of both attorneys was responsible for the same injury." Id. at 84-85 (emphasis added). Specifically, the court held, "if Gent negligently failed to seek reinstatement of the vacated alimony judgment, as Joyce alleges, he may well be

12

partially responsible for the loss of the alimony that had been due under that judgment prior to its vacatur." Id. at 85. The court thus concluded that "both Joyce and Gent may be liable to Mrs. Schauer, if their respective representations of her were negligent, for at least a portion of the same damages claimed by her." Id. (emphasis added).

Schauer is instructive in deciding the instant case. As in Schauer, Prout alleges that that his former counsel made a specific error that injured him – namely, allowing the statutes of limitations to lapse on his non-willful FMLA and SOX claims. Unlike in Schauer, however, Prout's former counsel does not allege that Prout's subsequent counsel had the ability to remedy the former counsel's error. Whereas Gent may have been able to seek reinstatement of Schauer's vacated alimony judgment — and may have been negligent for failing to do so — Sanford Heisler could not have done anything to make Prout's time-barred claims viable again. There is accordingly no "basis for holding that the alleged negligence of both attorneys was responsible for the same injury." And there are no grounds for holding that VRC and Sanford Heisler are both liable "for at least a portion of the same damages claimed by" Prout.

Although less analogous than Schauer, Barry v. Liddle, O'Connor, Finkelstein & Robinson also provides useful guidance.

13

98 F.3d 36 (2d Cir. 1996).[6] There the Second Circuit held that the plaintiff, Barry, survived summary judgment on his legal malpractice claim against the defendant law firm, Liddle, O'Connor. Barry alleged that Liddle, O'Connor provided him with mistaken advice that caused him to forfeit a $2 million unpaid compensation claim. Id. at 37. Barry ultimately settled his forfeited claim for $25,000, and the Second Circuit held that he had "made out a claim against Liddle, O'Connor for the difference between the $25,000 settlement and the value of the lost claim." Id. at 40.

It is unclear from the record whether Barry was represented by subsequent counsel when he settled his unpaid compensation claim. If he was, however, and if his subsequent counsel was negligent in settling for only $25,000, then Barry's subsequent counsel might have been liable for the same injury as Liddle, O'Connor - namely, the loss of value on Barry's unpaid compensation claim. Similarly, if VRC had alleged that Sanford Heisler was negligent in settling Prout's non-willful FMLA and SOX claims, then Sanford Heisler might have been liable for the same injury as VRC (i.e., the loss of value on those claims). VRC cannot, however, seek contribution based on Sanford Heisler's alleged negligence in settling Prout's willful FMLA

_____

[6] Barry was applying New York law, which is the law also here applicable.

14

and Dodd-Frank claims, as any loss on those claims is a distinct injury from the injury allegedly caused by VRC.

## 2. Negligence

While the discussion above is sufficient in itself to dispose of VRC's claim against Sanford Heisler, independently it must fall for a second reason. For even assuming that VRC could seek contribution based on Sanford Heisler's handling of Prout's willful FMLA and Dodd-Frank claims, VRC has not plausibly alleged that Sanford Heisler was negligent. "In order to establish negligence in a legal malpractice case, a plaintiff must allege that the attorney's conduct fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession." Kirk v. Heppt, 532 F. Supp. 2d 586, 592 (S.D.N.Y. 2008); see also Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006). Under New York law, "selection of one among several reasonable courses of action does not constitute malpractice." Rosner, 481 N.E.2d at 554. Instead, "[t]he general rule is that an attorney may be held liable for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Bernstein v. Oppenheim & Co., P.C., 554 N.Y.S.2d 487, 489-90 (1st Dep't 1990).

Sanford Heisler argues in its motion to dismiss that VRC "has set forth no facts tending to show that Sanford Heisler's

15

recommendation to settle Prout's two viable claims against his ex-employer was an 'unreasonable course of action.'" Sanford Heisler MTD 15. Sanford Heisler contends that Prout's viable claims were harder to prove than his time-barred claims, and that, "[g]iven the challenges faced with proceeding with only two of the four claims, and the defenses identified by Invesco to the two remaining viable claims, the recommendation to settle cannot be deemed unreasonable as a matter of law." Id. at 16.

VRC responds that the wisdom of Sanford Heisler's negotiating strategy is a factual question that cannot be resolved on a motion to dismiss. See VRC Opp. 12-14. VRC introduces, for the first time in its memorandum in opposition to Sanford Heisler's motion to dismiss, a confidential mediation statement that Sanford Heisler prepared on behalf of Prout in his mediation proceedings with Invesco. See ECF No. 81, Ex. A. VRC argues that the mediation statement reveals negligence on Sanford Heisler's part because Sanford Heisler chose "to submit a mediation statement to Invesco which cut Prout's settlement demand down to half of his claimed damages (from $12.2 million to $6.1 million), before negotiations had even begun." VRC Opp. 13. VRC argues that "[i]t is entirely plausible that Sanford Heisler's actions undercut Prout's negotiating position and caused him to lose negotiating leverage that he would have had

16

at the mediation 'but for' Sanford Heisler's unprompted fifty-percent (50%) reduction in his demand to Invesco." Id.

As a preliminary matter, this Court should not consider the mediation statement, as VRC has impermissibly introduced it outside of the pleadings. "Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010) (collecting cases). And while "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), the mediation statement was neither attached to the Third-Party Complaint nor incorporated by reference.[7]

Without the mediation statement, VRC sets forth only conclusory allegations that Sanford Heisler was negligent for settling Prout's claims instead of litigating them. VRC alleges that "Sanford Heisler knew or should have known that its recommendation to Prout that he voluntarily settle with Invesco at the non-binding pre-suit mediation did not properly and

---

[7] This is not the first time that VRC has impermissibly attempted to introduce documents outside the pleadings. See June 10 Order 20-21.

17

adequately protect Prout's interests and claims against Invesco," Third-Party Compl. ¶ 198; that "Sanford Heisler failed to commence an action on behalf of Prout as against Invesco and failed to pursue Prout's still-timely claims for Invesco's willful violation of the FMLA," and "retaliation in violation of Dodd-Frank," id. ¶¶ 199, 201; and that "Sanford Heisler, its agents, servants, members, officers, owners, partners and/or employees, as successor counsel, had sufficient time and opportunity to protect Prout's rights, interests and/or claims with respect to his claims and potential recovery as against Invesco," id. ¶ 203. A pleading "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it will not "suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678. VRC fails to meet this standard, and it therefore fails to plead that Sanford Heisler was negligent.

In the ordinary course, however, a party whose claim was dismissed under Rule 12(b)(6) might seek thereafter to amend the complaint. Therefore, at oral argument, the Court inquired of VRC's counsel whether, if the Court dismissed this claim for failure to plead negligence, VRC would seek to amend on any basis other than the mediation statement, to which VRC's counsel responded in the negative. See Transcript dated September 12,

2018 at 11:5-12:14. The Court will therefore consider the mediation statement for the limited purpose of determining whether the dismissal should be with prejudice. The answer is yes. This is because the decision to seek less than a party's maximum claimed damages at the outset of negotiations is a paradigmatic example of the "selection of one among several reasonable courses of action." Rosner, 481 N.E.2d at 554. Even if the decision was not the best one, it is, without more, "no more than an error of judgment." Id. And here nothing more is alleged.

### 3. Contribution to Plaintiff's Damages

There is still a third independent reason to dismiss VRC's claim against Sanford Heisler. Regardless of whether VRC has adequately pled negligence - and even assuming Sanford Heisler is liable for the "same" injury as VRC - the Third-Party Complaint fails to allege that Sanford Heisler contributed to Prout's damages, because it fails to allege that Sanford Heisler's actions "effectively compelled" Prout to settle his willful FMLA and Dodd-Frank claims. As discussed in this Court's June 10 and July 29 Orders, when a plaintiff settles its underlying action in a legal malpractice case, proof of proximate causation depends on whether "the settlement was effectively compelled by the mistakes of counsel." Kutner v.

Catterson, 867 N.Y.S.2d 156, 158 (2nd Dep't 2008); see June 10 Order 21-23; July 29 Order 4-6.

VRC nowhere alleges that Prout was effectively compelled to settle his willful FMLA and Dodd-Frank claims. To the contrary, the Third-Party Complaint repeatedly emphasizes the "voluntary" nature of Prout's settlement, see, e.g., Third-Party Compl. ¶¶ 152, 153, 158, 196-98, as well as the viability of his remaining claims, see, e.g., id. ¶¶ 149, 151, 190, 193, 195. In its focus on how Prout's settlement "was not effectively compelled by any alleged negligent acts, errors and/or omissions" by VRC, id. ¶¶ 153, 197, the Third-Party Complaint fails to explain how the settlement was effectively compelled by Sanford Heisler. As a result, VRC fails to allege that Sanford Heisler caused, and thereby contributed to, Prout's damages.

## II. Kelly's Motion to Dismiss under 12(b)(2)

Kelly moves to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. "On a Rule 12(b)(2) motion, plaintiff carries the burden of demonstrating that jurisdiction exists . . . ." Penachio v. Benedict, 461 F. App'x 4, 5 (2d Cir. 2012). However, "[w]here a court has chosen not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779,

20

784 (2d Cir. 1999). The Court will "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

"A district court's personal jurisdiction is determined by the law of the state in which the court is located." Spiegel v. Schulmann, 604 F.3d 72, 76 (2d Cir. 2010). VRC argues that the Court has personal jurisdiction over Kelly based on N.Y. C.P.L.R. 302(a)(1) and 302(a)(3). As relevant here, 302(a)(1) provides for "jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state." 302(a)(3) provides for "jurisdiction over any non-domiciliary . . . who . . . commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Both of these provisions are subject to the limits imposed by the Due Process Clause. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

## 1. 302(a)(1)

In deciding whether a court has jurisdiction under 302(a)(1), "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting

21

activities within New York." Ehrenfeld v. Bin Mahfouz, 881
N.E.2d 830, 834 (N.Y. 2007). "When a defendant engages in
purposeful activity here, personal jurisdiction is proper
because it has invoked the benefits and protections of our
laws." Id. at 835.

"Not all purposeful activity, however, constitutes a
'transaction of business' within the meaning of CPLR 302(a)(1)."
Fischbarg v. Doucet, 880 N.E.2d 22, 26 (N.Y. 2007). The New York
Court of Appeals has held, for example, that "merely telephoning
a single order to New York requesting a shipment of goods to
another state, the transitory presence of a corporate official
here, and communications and shipments sent here by an out-of-
state doctor serving as a consultant to plaintiff's New York
physician do not support CPLR 302(a)(1) jurisdiction." Id. While
"[a] single act within New York will, in the proper case,
satisfy the requirements of section 302(a)(1)," Licci ex rel.
Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 62 (2d Cir.
2012), "New York courts have consistently refused to sustain
section 302(a)(1) jurisdiction solely on the basis of
defendant's communication from another locale with a party in
New York," Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757,
766 (2d Cir. 1983). "Rather, communications into New York will
only be sufficient to establish personal jurisdiction if they
were related to some transaction that had its 'center of

22

gravity' inside New York, into which a defendant 'projected himself.'" Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005).

In its Third-Party Complaint, VRC makes the following five allegations in support of this Court's jurisdiction over Kelly: (1) "Kelly rendered legal services and/or legal advice to Prout within the State of New York," Third-Party Compl. ¶ 5; (2) "Kelly rendered legal services and/or legal advice to Prout while Prout was a resident of the State of New York," id. ¶ 6; (3) "Kelly derived substantial revenue from the legal services and/or legal advice rendered to Prout as a resident of the State of New York," id. ¶ 7; (4) "Kelly derived substantial revenue for the legal services and/or legal advice rendered to Prout within the State of New York," id. ¶ 8; and (5) "Kelly rendered legal services and/or legal advice to Prout concerning a lawsuit that was going to be commenced in the United States District Court within the State of New York," id. ¶ 9. All of these conclusory allegations are, however, premised on just a few facts, to wit, that VRC entered into a joint representation agreement with Kelly on March 25, 2016, id. ¶ 68, and that Kelly thereafter participated in five conference calls with VRC and Prout, see id. ¶¶ 69-78 (March 26, 2016); id. ¶ 81 (August 6, 2016); id. ¶¶ 82-86 (September 29, 2016); id. ¶¶ 101-09 (October 31, 2016); id. ¶¶ 113-15 (May 19, 2017).

Kelly responds in his motion to dismiss that "[t]he only factual allegations that even arguably 'support' this Court's personal jurisdiction are either false or barebones recitations devoid of any reference to actual facts." Third-Party Defendant Steven J. Kelly, Esq's Memorandum of Law in Support of Its Motion to Dismiss Pursuant to Rule 12(b)(2) and (6), at 2 ("Kelly MTD"), ECF No. 77. In an accompanying affidavit, Kelly avers that he "ha[s] never lived or worked in the State of New York and ha[s] never been enrolled in or attended any school, college, or university in New York," ECF No. 76 ¶ 4; that he "ha[s] never been admitted to the bar of the State of New York, ha[s] never been admitted pro hac vice to any state or federal court in New York, and ha[s] never practiced law in the State of New York," id. ¶ 5; and that he "ha[s] never held a bank account in New York, ha[s] never employed anyone in New York, ha[s] never been employed in New York, ha[s] never owned a New York telephone number or mailing address, ha[s] never owned or leased property in New York, ha[s] never been a party to any agreements or contracts in New York, and ha[s] never supplied any goods or services in New York," id. ¶ 6.

Kelly also avers that he was retained by Prout only in connection with Prout's daughter's sexual assault case in New Hampshire, and that the agreement between his former law firm and the Prouts was executed in Florida and governed by Maryland

24

law. Id. ¶ 7. At the time the agreement was executed, no member of the Prout family resided in New York, and the agreement did not refer to Invesco or New York. Id. Furthermore, Kelly avers that he "never held [himself] out as an employment lawyer," id. ¶ 10, never represented "Prout, or anyone else, in any claim against Invesco," id. ¶ 11, and never "derived any income or other benefit from any claim against Invesco, . . . [or] shared in any portion of any attorneys' fees and/or expenses derived from any claim by Mr. Prout against Invesco," id. ¶ 12. Although Kelly acknowledges that he participated in conference calls with Prout and VRC, he avers that his participation was limited to "advising [VRC] of the status of [Prout's daughter's case] and . . . coordinat[ing] with [VRC] on the limited overlap between [that case] and . . . Prout's action against Invesco." Id. ¶ 13.

With respect to his alleged "joint representation agreement" with VRC, Kelly avers that the only such agreement was an email he received from a VRC attorney stating: "This confirms that we have a common interest in representing members of the Prout family. All of our communications are therefore protected by the attorney-client privilege." Id. ¶ 14. Kelly avers that he responded, "Excellent. Thanks very much!" and that the exchange "was purely to protect the attorney-client privilege and in no way changed the scope of [Kelly's]

25

representation" of the Prouts. Id. Kelly emphasizes that neither
he nor his former law firm "derived any income from [his]
participation in these conference calls," id. ¶ 15, and that,
"[d]uring each of the conference calls, [Kelly] was physically
located in Maryland and . . . believe[s] [Prout] was located in
New York for only one of the conference calls and in Florida for
the other conference calls," id. ¶ 16. Kelly also avers that,
"[t]o the best of [his] recollection, Prout contacted [Kelly] at
[his] Baltimore office on [Prout's] Florida based cell phone and
Prout connected to [VRC]." Id.

VRC does not meaningfully contest Kelly's affidavit, nor
offer any counter-affidavit in response.

Construing the pleadings and Kelly's affidavit in the light
most favorable to VRC, the Court concludes that VRC has failed
to make a prima facie showing of jurisdiction. Based on the
record before the Court, there is simply no evidence that Kelly
intended to "project[] himself" into New York, Maranga, 386 F.
Supp. 2d at 306, or "avail[] [him]self of the privilege of
conducting activities within" the state, Ehrenfeld, 881 N.E.2d
at 834. Although Kelly participated in several phone calls with
Prout and VRC, his uncontested affidavit makes clear that his
purpose in doing so was to represent the Prouts in their
daughter's New Hampshire sexual assault case. Kelly was not an
employment lawyer, he was not retained to work on Prout's case

26

against Invesco, and he and his former law firm derived no income from his participation in the conference calls with VRC and Prout. Although the Third-Party Complaint makes repeated conclusory allegations that "Kelly provided legal services and/or legal advice to Prout concerning his anticipated claims against Invesco," Third-Party Compl. ¶¶ 71, 83, 108, 114, the only specific example of such services and advice is that Kelly said he was "okay with the decision" made by VRC and Prout to defer Prout's litigation against Invesco, id. ¶ 107. This lone allegation does not support the conclusion that New York was the "center of gravity" of any transaction that Kelly had with Prout. Maranga, 386 F. Supp. 2d at 306.

Numerous cases support the Court's conclusion. In Pincione v. D'Alfonso, for example, the court held that personal jurisdiction was lacking under 302(a)(1), even though the defendants had participated in many telephone calls and video conferences with the New York-based plaintiff, because the defendants did not "inten[d] to project [themselves] into New York and avail themselves of its laws." 506 F. App'x 22, 25 (2d Cir. 2012). Instead, the court reasoned, the defendants' contacts with New York "were intended to facilitate a business deal in Italy, where the relevant corporations and bank accounts were located." Id. Similarly, in Mayes v. Leipziger, the court held that it had no jurisdiction over California lawyers "who

never entered New York but who undertook in letters and
telephone calls from California to New York the representation
of a New York resident in litigation in California." 674 F.2d
178, 178 (2d Cir. 1982). And in Rosenblatt v. Coutts & Co. AG,
the court held that it lacked jurisdiction over a Swiss
defendant, even though the defendant communicated with and
transferred funds to a New York resident, because the agreement
that the defendant allegedly breached was negotiated in
Switzerland, concerned property in Switzerland, and was subject
to Swiss law. No. 17 Civ. 3528 (AKH), 2017 WL 3493245, at *3-4
(S.D.N.Y. Aug. 14, 2017).

Kelly is in the same boat as the parties in the above
cases. Although he engaged in several communications with New
York-based parties (and it is unclear whether Prout was even
located in New York for most of the calls in question), his
communications were made in service of litigation conducted
outside the state. His "connection to New York [wa]s entirely
incidental, not purposeful," id. at *4, and it was therefore
insufficient to support this Court's jurisdiction under
302(a)(1).

### 2. 302(a)(3)

As noted, N.Y. C.P.L.R. 302(a)(3) provides for "personal
jurisdiction over any non-domiciliary . . . who . . . commits a
tortious act without the state causing injury to person or

28

property within the state," and "expects or should reasonably
expect the act to have consequences in the state and derives
substantial revenue from interstate or international commerce."
For the reasons discussed below in the context of Kelly's
12(b)(6) motion to dismiss, VRC has failed to allege that Kelly
was negligent, or that he contributed to Prout's damages. As a
result, VRC has failed to allege that Kelly committed any
"tortious act . . . causing injury," as is required to support
personal jurisdiction under 302(a)(3).

## III.  **Kelly's Motion to Dismiss under 12(b)(6)**

### 1. **Negligence**

As discussed above, VRC alleges that Kelly acted as its
concurrent counsel with respect to Prout's claims against
Invesco, and that to the extent VRC was negligent in allowing
the statute of limitations to lapse on Prout's non-willful FMLA
claim, Kelly was negligent as well. See Third-Party Compl.
¶¶ 169-83. Specifically, VRC alleges that Kelly was negligent
because he said he was "okay with the decision" made by VRC and
Prout to defer Prout's litigation against Invesco. Id. ¶ 107.

Kelly contends that he did not represent Prout with respect
to Prout's claims against Invesco, but that he instead
represented Prout only in the matter arising out of Prout's
daughter's sexual assault. Kelly MTD 11. Kelly argues that he
was not present for any of VRC's initial discussions with Prout

regarding Prout's litigation against Invesco, see id. at 11-12, and that VRC's allegations regarding the conference calls for which Kelly was present "lack sufficient facts to support the conclusory statement that Kelly represented [Prout] in his dispute with Invesco," id. at 13. With respect to the October 31, 2016 conference call — the only conference call for which Kelly is alleged to have made a specific statement — Kelly argues that he did not provide legal advice by saying he was "okay with the decision" made by VRC and Prout to defer Prout's litigation against Invesco. See id. at 16-17. Instead, Kelly argues, it was VRC that advised Prout about the costs and benefits of bringing Prout's claim within the statute of limitations, and to the extent Kelly acquiesced in the decision made by VRC and Prout, his acquiescence did not constitute negligent legal advice. See id. at 15-16.

VRC responds that its allegations make it "more than plausible to infer that (i) Kelly was part of [Prout's] legal team with respect to his potential claims against Invesco; (ii) Prout wanted Kelly's legal advice on what was discussed with respect to 'timing' of an action against Invesco; and (iii) Kelly did in fact provide legal advice to Prout during that teleconference concerning the timing of said suit." VRC Opp. 7. By stating that Kelly "was 'okay with the decision' to defer litigation with Invesco," VRC argues, "Kelly effectively adopted

[VRC's] advice as his own and his concurrence therewith constituted further legal advice concerning the litigation strategy." Id. In addition, VRC tries once again to introduce further facts outside the pleadings, see id. at 7 n.4, which the Court will not consider.[8]

Based on the pleadings, the Court concludes that VRC has not adequately pled negligence. Specifically, VRC has not plausibly alleged that Kelly represented Prout in Prout's litigation against Invesco. Under New York law, an attorney may be held liable for legal malpractice only for actions taken within "the scope of its representation." AmBase Corp. v. Davis Polk & Wardwell, 866 N.E.2d 1033, 1037 (N.Y. 2007). And although "[t]he extent of the firm's duty to represent their client's interest is not limited by the scope of their retainer agreement," Greenwich v. Markhoff, 650 N.Y.S.2d 704, 706 (1st Dep't 1996), that duty extends beyond the scope of the retainer agreement only to those "reasonably apparent legal matter[s] of which an attorney might be expected to apprise a client," id.; see id. (denying motion to dismiss legal malpractice complaint where workers' compensation attorney failed to commence personal injury action within statute of limitations).

---

[8] The Court is disturbed by VRC's counsel's repeated violations of the limits set by law on Rule 12(b)(6) motions practice, and advises counsel that comparable violations in the future will invite sanctions.

Here, VRC has not plausibly alleged that Prout's litigation with Invesco was within the scope of Kelly's representation. Although VRC alleges that Kelly "entered into a joint representation agreement" with VRC, Third-Party Compl. ¶ 69, and "provided legal services and/or legal advice to Prout concerning his anticipated claims against Invesco," id. ¶¶ 71, 83, 108, 114, the only specific example VRC offers is that Kelly said he was "okay with the decision" made by VRC and Prout to defer Prout's litigation against Invesco, id. ¶ 107. While the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in [VRC's] favor," ATSI Commc'ns, Inc., 493 F.3d at 98, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678. It is implausible that Kelly represented Prout in his Invesco action, but that the only legal advice Kelly offered over five conference calls was a very brief statement of concurrence. Instead, the only reasonable inference is that VRC represented Prout in his Invesco action, Kelly represented Prout in his daughter's sexual assault case, and the parties participated in several conference calls to coordinate the two actions. The Third-Party Complaint supports nothing more.

**2. Contribution to Plaintiff's Damages**

Furthermore, regardless of whether Prout's Invesco litigation was within the scope of Kelly's representation, or whether Kelly was negligent in saying he was "okay with the decision" made by VRC and Prout to defer Prout's litigation against Invesco, VRC has not plausibly alleged that any such negligence contributed to Prout's damages. Even drawing all reasonable inferences in VRC's favor, the Third-Party Complaint suggests that VRC, not Kelly, was retained to represent Prout in his dispute with Invesco, and that VRC, not Kelly, counseled Prout regarding the pros and cons of deferring litigation. See Third-Party Compl. ¶ 102. According to its own complaint, VRC advised Prout of the risks associated with bringing his non-willful FMLA claim within the statutes of limitations, and "[f]ollowing this in-depth analysis presented by VRC, Prout decided that it would be better for him to defer commencement of his action against Invesco." Id. ¶ 105. VRC does not allege that Prout would have brought his claim within the statute of limitations if Kelly had not said he was "okay with the decision" to defer litigation, and the Court cannot reasonably draw such an inference from the pleadings. At bottom, the Third-Party Complaint provides no basis to infer that Kelly contributed to Prout's damages.

## Conclusion

33

In sum, VRC has failed to state a claim for contribution against Sanford Heisler or Kelly. Furthermore, based on the pleadings and Kelly's uncontested affidavit, the Court finds that it lacks personal jurisdiction over Kelly. For the foregoing reasons, the third-party defendants' motions to dismiss are granted, and the Third-Party Complaint is hereby dismissed with prejudice. The Clerk is directed to close the entries at docket numbers 70, 74, and 78.

SO ORDERED.

Dated:     New York, NY

September 25, 2018            JED S. RAKOFF, U.S.D.J.